MUTUAL LIFE INS. CO. OF NEW YORK v. McDONALD.—150 S. W. (2d) 715.

Middle Section.   January 25, 1941.

Petition for Certiorari Denied by Supreme Court, May 3, 1941.

Bass, Berry & Sims, of Nashville, and Louis W. Dawson, of New York City, for plaintiff in error Insurance Co.

A. B. Humphreys, Jr., and Louis Chambers, both of Lebanon, for defendant in error McDonald.

CROWNOVER, J.   The plaintiff Leslie H. McDonald filed these separate actions against the Mutual Life Insurance Company of New York to recover "total and permanent" disability benefits in each case under a policy of life insurance issued to him by the defendant.

Each of the three policies contained substantially the same provision as to "total and permanent" disability benefits.

The cases were tried together in the Circuit Court by agreement.

Each policy provided that the insured should be paid certain "disability benefits," if, before attaining the age of 60 years, he should become "totally and permanently disabled by bodily injury or disease, so that he is, and will be, permanently, continuously and *wholly prevented thereby from performing any work for compensation, gain or profit, and from following any gainful occupation,* . . . " and each policy provided that the payment of premiums should be waived on his becoming totally and permanently disabled.

The defendant Insurance Company filed a plea of nil debet in each case.

The cases were tried by the judge and a jury.   At the conclusion of all the evidence the defendant moved the court for peremptory

instructions in its favor in each case, on the ground that there was no evidence upon which a verdict for the plaintiff could be predicated, which motion was overruled. The jury returned a verdict in favor of the plaintiff in each of the three cases and judgment was accordingly entered for $2,003.99, for disability benefits accruing to January 1, 1940, interest thereon, and premiums wrongfully collected and interest thereon.

The defendant's motion for a new trial was overruled and it appealed in error to this court and has assigned errors, which are, in substance, as follows:

(1)  There is no evidence to support the verdict, and the court erred in overruling the defendant's motion for peremptory instructions.

(2)  The trial judge erred in refusing to exclude the testimony of Dr. F. B. Dunklin. •

(3)  The trial judge erred in charging the jury with respect to impeaching the credibility of witnesses as follows: "Still another way is to show that the witness has made statements out of court on former occasions contrary to and inconsistent with the statements made here on the trial of these cases, but matters of that kind, Gentlemen, should be looked to with care and caution since the witness may not have fully understood the attacked witness or he may not have fully explained himself on the former occasion."

(4)  The trial judge erred in charging the Jury as follows: "The phrase 'total disability' has, under our holdings in Tennessee, a well understood meaning in our law of insurance. It does not mean a state of absolute helpfulness. Our courts universally hold here and define that condition as an inability to do the material acts necessary to the prosecution of the insured's business or occupation, substantially all the material acts in substantially his usual and customary manner. A person might be totally disabled, although he would at some time or other or at intervals be able to perform certain acts in connection with his former occupation or calling."

(5)  The trial judge erred in failing and refusing to charge the defendant's special request which was as follows: "Gentlemen of the jury, the defendant did not contract in the present case to pay indemnity to plaintiff McDonald in the event he became totally disabled to carry on the business of farming or insurance agent but only in the event such disability prevented him from performing any work for compensation, gain or profit, and from following any gainful occupation for which he might be reasonably qualified. Total disability must be distinguished from partial disability, and if you find from the evidence in this case that the plaintiff's disability is only partial and not total then plaintiff would not be entitled to recover and you must find for the defendant."

(6)  The trial judge erred in failing and refusing to charge the

defendant's special request which was as follows: "Gentlemen of the jury, if you find from the testimony in this case that the plaintiff, throughout the entire time of the period of alleged total permanent disability, has paid a privilege tax to the State of Tennessee and has qualified and been licensed to act as an insurance agent under the laws of Tennessee, and that during said time he has acted as agent for a number of insurance companies for which he has received substantial compensation, I charge you that he is not entitled to recover in this case and even though you should find that he has conducted such insurance agency by employing others to do the physical work required by such business, nevertheless the plaintiff would be engaged in the business of acting as insurance agent for compensation and the defendant would not be liable in this case."

The plaintiff, Leslie H. McDonald, was 50 years of age on June 22, 1940.

He was reared on a farm and became a farmer. When these suits were instituted he owned a farm of 242 acres in Wilson County about 8 miles east of Lebanon.

He attended school until he reached the seventh grade.

In 1922 he began writing insurance in addition to operating his farm. In 1924 he went to Lebanon to reside and opened an insurance agency. He employed a tenant farmer to operate his farm.

He wrote what was called farm insurance—fire and tornado insurance on farm residences and buildings. Later he wrote a small amount of insurance on town property. At one time he wrote a few life insurance policies.

Farm policies are usually issued for five years, the premium payable in annual installments. If a policy is cancelled before expiration, the unearned premium is refunded to the assured. The agent or solicitor is required to refund, out of his commission, his proportionate share of the premium.

Since 1931 he has had an arrangement or understanding with M. H. Thompson, an insurance agent, by which Thompson sometimes wrote fire and tornado insurance on farm buildings in the company represented by McDonald. Thompson secured the application and McDonald secured a policy in his company; Thompson received 75% of the commission and McDonald 25%.

In 1938 a farm fire insurance company, in which Thompson had written a number of policies, went out of business and cancelled all policies. Thompson made an agreement with McDonald to re-write this insurance in his company, McDonald to receive 25% of the commission.

For the last four years D. F. McNabb has been soliciting farm insurance for McDonald's agency, receiving 50% of the commission.

Four or five months before the trial Edwin Elam began writing

farm insurance through McDonald's agency, receiving 50% of the commission.

Three weeks before the trial McDonald entered into a contract with the Home Indemnity Company to write insurance for it.

The insurance agency is maintained in the name of L. H. McDonald, the privilege license is in his name, also the bank account. His name is signed to all reports and checks.

The defendant Insurance Company issued to him, on November 27, 1923, a policy insuring his life for $5,000; on November 19, 1926, a policy of $2,000; and on July 14, 1928, a policy of $1,500.

In February, 1938, he became ill. On March 7, 1938, he consulted a physician, Dr. Tilley, who told him his blood pressure was too high.

Since February, 1938, he has suffered with pains in his left leg, hip, left shoulder, neck and back.

Dr. Tilley and Dr. McFarland testified that he was suffering from high blood pressure, hypertension, neuritis, sciatica, and arthritis of the shoulder and spine.

It was stipulated by the parties that, in the event the jury should find the issues for the plaintiff, that the plaintiff was totally and permanently disabled on August 26, 1938, and that such disability had existed since April 1, 1938.

1. The plaintiff McDonald, his witnesses, and his doctors testified that he was totally and permanently disabled, and that he was unable to do any work of any kind; and his doctors testified that his condition would not improve but would become worse.

The defendant Insurance Company contends that he is not totally disabled but only partially disabled.

The jury found that he was totally and permanently disabled, and this verdict will not be disturbed in this court if there is any material evidence to support it.

The extent of a claimed disability, whether total or partial, is ordinarily a question for the jury. 6 Cooley's Briefs on Insurance, 5614; Metropolitan L. Ins. Co. v. Blue, 222 Ala., 665, 133 So., 707, 79 A. L. R., 855; Prudential Ins. Co. v. Davis, 18 Tenn. App., 413, 429, 78 S. W. (2d), 358.

But, in consideration of the defendant's motion for a directed verdict and in ascertaining whether there is any evidence to support the verdict of the jury in the plaintiff's favor, the plaintiff must be given the benefit of all evidence that was adduced in his behalf; and all evidence in conflict therewith must be disregarded.

Moreover, the plaintiff is entitled to all legitimate inferences of fact favorable to him which may be reasonably drawn from the evidence tending to support the cause of action stated in his declaration.

The defendant insists that the following facts, either admitted by the plaintiff or established by undisputed testimony, show that McDonald is not totally and permanently disabled within the meaning of his policies:

(1) Since February, 1938, McDonald drove his truck out into the country and called on four customers.

(2) In the spring of 1939 he called on W. S. Hastings and obtained his application for insurance.

(3) He had employed M. H. Thompson, D. F. McNabb, and Edwin Elam as insurance solicitors to carry on the business under his supervision.

(4) He checks over their work, adjusts claims for losses.

(5) That he goes to his office every day, remaining there for hours; that there are 22 steps to be climbed to reach his office on the second floor, and he goes up and down these steps several times a day.

(6) He drives a truck, making a number of trips a day.

(7) He goes often to his farm.

(8) He hauls lumber and feed to the farm, and cans of milk and hampers of potatoes to the town and helps unload them, and loads heavy bundles upon the truck.

(9) He maintains the insurance agency in his name, secures license in his name, keeps bank account in his name, and signs all checks.

(10) He entered into a contract with the Home Indemnity Company to write insurance for it, about three weeks before the trial.

(11) His income from the insurance business and the farm for the years 1938 and 1939 was about the same as for the previous years.

McDonald admitted that he called on four customers, prospects for insurance, one afternoon, but said he found that he could not stand riding about the country or the effort of soliciting an insurance policy.

While returning from Nashville with his wife he stopped at the home of W. S. Hastings, who had previously called at McDonald's office and secured from his secretary Miss Shorter a binder on some tourists' cabins, and talked to him. Later Hastings called at the office and obtained insurance on a house he had built.

He testified that he is not able to supervise the insurance business; that his wife manages it; that he does not adjust claims, but talks about the matters if they arise when he is at the office; that he goes to his office to loaf, but does no work; that he is able to drive his "light pick-up truck," but cannot drive it far at a time, and goes to his farm for air, sunshine, and diversion, as directed by his doctor, but does no work; that a tenant farmer operates the farm and he is not able to oversee the farm.

He admitted that he had twice hauled some lumber, which was loaded at the lumber yard and unloaded at the farm by the farm hands, and had hauled a little feed, and milk cans several times, but denied that he loaded or unloaded milk cans or heavy bundles or potatoes.

McDonald cannot be said to have been engaged in the business of farming or conducting an insurance agency since March 7, 1938. The proceeds of the insurance business are the return on

policies he had secured before he became incapacitated. He was not able to carry on these undertakings in substantially his usual or customary manner nor to perform substantially the material acts necessary to the prosecution of such enterprises, nor does it appear that he was able to follow any other calling. Pacific Mut. L. Ins. Co. v. McCrary, 161 Tenn., 389, 32 S. W. (2d), 1052.

██ ██ Mrs. McDonald estimated the income of the business and the farm for the years 1938 and 1939, but it was only an estimate. No books were kept, and it could not be said what the income was for the previous years.

"The term 'total disability' is a relative term, depending in a measure upon the character of the occupation and the capabilities of the insured, and to a large extent upon the circumstances of the particular case. Ordinarily it is a question of fact, and not of law." Travelers' Ins. Co. v. Plaster, 210 Ala.., 607, 98 So., 909, 911.

"Thus, a physician who is confined to his bed by an accident is totally disabled if he is unable to go to his office and make calls upon his patients, though he occasionally examines and prescribes for patients who come to his bedside (Wolcott v. United Life & Accident Ins. Ass'n, 55 Hun., 98, 8 N. Y. S., 263). An insured may be able to do trivial things not requiring much time or physical labor, and, through others acting under his direction, to perform heavier duties requiring physical exertion, which, in the ordinary and proper performance of his duties, he had theretofore done personally. Yet, because of his inability to do these heavier and material things personally, he is wholly disabled, within the terms of the policy, provided the things he is unable to do personally constitute substantially all of his said occupation. (Commercial Travelers' Mut. Acc. Ass'n v. Springsteen, 23 Ind. App., 657, 55 N. E., 973.) The mere fact that he is able to go to his place of business for a short time each day does not render the disability less than total, if in fact he could do no work there." 6 Cooley's Briefs on Insurance 5544, and cases cited. "If he is obliged to employ another to manage the business, and can give personal attention to only a few of the details devoting substantially all his time to obtaining relief for his injury, his disability must be regarded as total (United States Casualty Co. v. Hanson, 20 Colo. App., 393, 79 P., 176)."

In Principi v. Columbian Mut. Life Ins. Co., 169 Tenn., 276, 84 S. W. (2d), 587, 590, our Supreme Court said:

"The two following rules for determinating liability are applicable:

"First, as a condition of recovery, it must appear that the insured is incapacitated to earn, not only in his chosen or previously formed occupation, but in any other to which he may be reasonably fitted.

"Second, to defeat recovery on the ground of earning capacity, it must appear that the remaining capacity to earn, despite disability, is a capacity to earn substantially. No scintilla rule applies. The earn-

ing capacity remaining must bear some reasonable relation to the natural or previous capacity to earn, against loss of which it is the purpose of the policy contract to insure.''

2. The defendant's second 'assignment of error is that the trial judge erred in refusing to exclude the testimony of Dr. F. B. Dunklin that McDonald was totally and permanently disabled. The defendant contends that Dr. Dunklin examined McDonald for the purpose of executing a ''physician's statement of disability,'' to be attached to McDonald's claim which he filed with the Insurance Company asking for disability benefits; that the doctor testified on the hearing that he based his opinion on ''subjective and objective'' symptoms; and that a physician who examines a patient for the purpose of qualifying himself to testify as a witness must base his opinion upon objective rather than subjective symptoms. 22 C. J., 670; Gulf Refining Co. v. Frazier, 15 Tenn. App., 662, 689.

We have carefully read Dr. Dunklin's testimony, and think the trial judge was correct in refusing to exclude it. He testified that he made a ''very thorough examination'' of McDonald. On being asked if he based his opinion upon subjective symptoms, he said: ''Subjective and objective.'' He further testified that he took McDonald's blood pressure and found it 210 over 110; that this was not subjective.

This evidence was admissible, and the second assignment is overruled.

3. The defendant's third assignment must be overruled, as the portion of the judge's charge therein quoted is a correct statement of the law.

4. The fourth assignment must be overruled. After the judge charged the jury as above set out in the fourth assignment, he said:

''But I charge you further, Gentlemen, the total disability, as used in the policies issued by the Insurance Company, and sued on in this case or in these cases, does not mean absolute helplessness, but an inability to do the substantial and material acts necessary to the prosecution of any gainful occupation or business, not necessarily the ones which he was doing but any business or occupation for which he is qualified and fitted, in the usual and customary way or manner.''

This paragraph supplies what the defendant claims was left out of the part quoted in said assignment.

5. We do not think the court was in error in refusing to charge the special request of defendant which is quoted in assignment No. 5 above. He had defined total disability, and had told the jury that it must determine whether McDonald was totally or partially disabled, and we think the jury understood the matter, and defendant was not prejudiced by the court's refusal to charge said special request.

6. The court was correct in refusing to charge the defend-

ant's request which is quoted in its sixth assignment of error. This request is equivalent to a motion for peremptory instructions. The fact that McDonald secured a license to conduct an insurance agency in his own name, and executed a contract with another insurance agency to represent it, were circumstances to be considered by the jury in determining whether he was conducting the business and therefore not incapacitated to carry on a business of some kind.

We think we should take an ordinary common sense view of these total and permanent disability policies. Of course, each case greatly depends upon the wording of the particular policy. Our courts are committed to a liberal construction of these insurance contracts. Principi v. Columbian Mut. Life Ins. Co., 169 Tenn., 276, 283, 84 S. W. (2d), 587.

In this case we have a man who was in robust health and was active and energetic when he obtained these policies, and years afterwards he became seriously afflicted with neuritis, sciatica, and arthritis, and suffered not only much pain from these diseases, but was also afflicted with high blood pressure to the extent that he could not attend to the duties of his office or oversee the work on his farm; and only went to those places on the advice of his doctors who told him to go out into the sunshine and take fresh air. He testified that he had to turn over his insurance business to his wife and secretary and his farm to his tenant. A man in constant pain is not in condition to attend to business.

The fact that he signed checks and talked about his insurance and farm business when asked, and drove his truck in a few instances when loaded with lumber or feed, and at other times loaded with a few milk cans should not put him in the class as operating the business.

There are many instances where people are totally and permanently disabled, who own stocks and bonds, which they collect by clipping coupons and depositing the money in the banks. There are other instances where the insured is the nominal manager but renders service of no consequences. Can it be said that these people are following gainful occupations which would debar them from recovery when they have total and permanent disabilities?

We think the cases of Pacific Mutual Life Ins. Co. v. McCrary, 161 Tenn., 389, 32 S. W. (2d), 1052; Metropolitan Life Ins. Co. v. Noe, 161 Tenn., 335, 31 S. W. (2d), 689; and Principi v. Columbian Mut. Life Ins. Co., 169 Tenn., 276, 84 S. W. (2d), 587, have defined the policy of our courts on these policies, (1) that the policies are to be liberally construed, (2) that where there is material evidence on the issue, it is a question for the jury, and (3) that if the insured is permanently disabled from following or directing his business or any business for which he was fitted, then he may recover.

Our Supreme Court in the case of Principi v. Columbian Mut. Life Ins. Co., supra, quoted with approval an excerpt from the opinion in

the case of Foglesong v. Modern Brotherhood, 121 Mo. App., 548, 97 S. W., 240; Id., Mo. App., 108 S. W., 1199, as follows:

"Where a benefit certificate provided for indemnity in case of 'permanent and total disability of said member, which renders him unable to carry on or conduct any vocation or calling,' the court refused to construe the provision to mean that no recovery could be had if insured was able to carry on any vocation whatever. It was there said: 'But we are unwilling to adopt such a doctrine, the effect of which would be, practically, to reduce all such contracts to nullities, and to make them the instruments of extracting dues from policy holders without creating any liability on the part of the insurers. Common knowledge of the occupations in the lives of men and women teach us that there is scarcely any kind of disability that prevents them from following some vocation or other, except in cases of complete mental inertia. We have examples of persons without hearing and without sight following a vocation—some without feet, and some without hands, engaged in business. The achievements of disabled persons are seemingly marvelous. Under defendant's theory, the plaintiff might embark in the peanut trade or follow the business of selling shoe strings or lead pencils, or follow some similar calling; in which instances, under the rule invoked, there would be no disability within the meaning of the policy. In our opinion, such was not within the contemplation of the parties. In order to carry out the intent of the parties, it is our duty to disregard the broad language used which would have the effect to defeat the purpose of the contract and render it a nullity.' "

It follows that all assignments of errors being overruled the judgment of the lower court is affirmed. A decree will be entered in this court in favor of McDonald and against the Insurance Company for $2,003.99 together with interest from June 15, 1940, to the present and also the costs of the cause that accrued in the lower court.

The costs of the appeal are adjudged against the Insurance Company and the surety on its appeal bond.

Felts, J., concurs; and Faw, P. J., dissents.