# EVERETT v. EVANS.—207 S. W. (2d) 350.

Middle Section.　August 30, 1947.

Petition for Certiorari denied by Supreme Court, December 8, 1947.

George S. Buckner, of Murfreesboro, for plaintiff.

Manier & Crouch, of Nashville, for defendant.

FELTS, J. This is an action for personal injuries. Plaintiff Lular Everett was riding in defendant Evans' ambulance, taking her daughter, Nettie Frances Hancock, to a hospital. While the vehicle was in motion, its side door came open, she fell out upon the highway, and received the injuries sued for.

The negligence charged is that the door was in an unsafe and dilapidated condition, was insecurely fastened on account of the inattention of defendant's servant, and the ambulance was being driven at a reckless and unlawful rate of speed so as to endanger or to be likely to endanger the life and limb of plaintiff riding in the ambulance.

There was a verdict and judgment in favor of plaintiff for $2,500. Defendant appealed in error and has assigned a number of errors. His first insistence is that there was no evidence of any negligence on his part and that the trial judge should have directed a verdict for him.

Defendant was an undertaker at Liberty, Tennessee, and operated an ambulance for hire. On or about January 28, 1946, he was employed to take plaintiff's daughter from the latter's home in DeKalb County to a hospital in Lebanon. On this occasion his ambulance was driven by his employee, Hartwell Fite.

The daughter was placed on the ambulance cot and the cot was put through the back door and placed lengthwise along the left side of the ambulance. On the right side there were two small seats, one near the foot of the cot and the other toward the front near the head of the cot. On the right side near the front seat was a door which opened toward the rear, with a handle on the outside and one on the inside, the handle being some two feet ahead of the front seat. When the daughter was put in the ambulance Fite closed the rear door, opened the side door, and the daughter's husband, Marvin Hancock, and her mother, Lular Everett, the plaintiff, got in the ambulance, and Fite closed the side door. Hancock took the front seat and plaintiff the rear seat. There was a glass partition between this part of the ambulance and the driver's seat.

On the way to the hospital Fite stopped the ambulance at Liberty, and the daughter's physician, Dr. Adamson, got in the ambulance in the seat beside the driver. The patient was so seriously ill that it was thought necessary for her doctor, her husband, and her mother, plaintiff, to accompany her to the hospital. It was en route to the hospital that this accident happened.

The ambulance was going around a curve which turned to the right, the highway being higher on the left or outside of the curve. For the convenience of plaintiff she and Hancock undertook to exchange seats, he walking

to the rear seat and she to the front seat. Neither the driver nor the doctor was aware of plaintiff's movements. When she went to sit down she fell against the door, which flew open, and she fell out on the highway. None of the other witnesses saw her fall. Hancock's back was turned to her as were the backs of the driver and the doctor. They were attracted by the noise of the door swinging back, and looked and saw her lying on the highway. The driver stopped as quickly as he could, backed the ambulance near her, and they put her in the ambulance and took her to the hospital too.

No witness except plaintiff herself undertook to tell just how the accident happened. Describing it in her direct examination she said:

"Q. Was the ambulance standing still or moving at the time you fell out? A. It was moving.

"Q. Could you tell about how fast it was moving? A. No, sir, I couldn't tell; wasn't moving so very fast.

"Q. How come you to fall out, if you know, what were you doing, in other words? A. Well, I got up and moved.

"Q. Was it necessary for you to move over to attend to the patient? A. Yes, sir, it was necessary for me to move, hadn't been I wouldn't have moved.

"Q. Just how did you move? A. I just got up and walked on down and went to sit down and when I sit down I fell against the door and fell out.

"Q. What made you fall against the door, if you know? A. I don't know unless I got drunk or something, just tottered and fell.

"Q. Was the ambulance running? A. Yes, sir, it shore was running.

"Q. Did you open that door? A. No, sir, I didn't open no door.

"Q. What did the door do? A. I know when I fell against it it flew open, I cotch myself, I don't know, give me such a jar I don't know just what I did do; I know when I fell out I didn't know a thing, not a thing on earth, just killed me dead."

On cross-examination she said:

"Q. Well, anyway, you say you fell against the door? A. Yes sir.

"Q. On the right side? A. Yes sir, it was on the right side.

"Q. Well, did you see the handle on the door? A. I never seed anything. I wasn't thinking because I was worried about—

"Q. How is that? A. I never seed no handle, never thought nothing about no handle because I was worried about Nettie. I was worried to death.

"Q. You don't know whether you fell against the handle or not, do you? A. No, I don't know about the handle. I know I fell against that door and I went out. I didn't miss it, either.

"Q. And that is before you sat down? A. Yes sir, when I went to sit down I must have went against it and I went out.

"Q. You didn't tell the driver anything about moving, did you? A. No sir, I didn't tell him anything about it.

"Q. You didn't call to him or tell him to stop or anything and let you move? A. No, I didn't.

"Q. You just got up and moved? A. I just got up and moved."

It was shown that the handle when pressed down opened the door. The driver testified: "Q. Did she tell you how she happened to fall out? A. Well, I asked her. I said; 'Do you know what happened?' She said: 'No, I don't know unless I grabbed hold of the door handle.' She said: 'I just grabbed. I saw something to grab to and I don't know what I grabbed to.' " (Tr. p. 99.) Plaintiff did not testify in rebuttal and did not deny making this statement.

Plaintiff adduced no direct evidence to show that the door, the handles, or the catches were in a dilapidated or defective condition. The evidence for defendant was that they were in proper condition and in nowise defective. While it was shown that this door had come open once or twice before, no cause was shown for this except perhaps the door had been left not completely closed on that occasion or those occasions. The driver, who was in nowise impeached or contradicted, testified that he had securely closed the door when plaintiff got in the ambulance.

Plaintiff adduced no evidence that the ambulance was being operated at a negligent speed. No witness undertook to estimate the speed and no one said that it was being driven fast.

In considering whether a verdict should have been directed for defendant we must look to all the evidence, take as true the evidence for plaintiff, discard all countervailing evidence, and allow all reasonable inferences from the evidence in favor of plaintiff. Wildman Mfg. Co. v. Davenport Hoisery Mills, 147 Tenn. 551, 556, 557, 249 S. W. 984; Tennessee Cent. Ry. Co. v. McCowan, 28 Tenn. App. 225, 188 S. W. (2d) 931; Poole v. First National Bank of Smyrna, Tenn. App., 196 S. W. (2d) 563, 567, 568.

A case may be made out by direct evidence, circumstantial evidence, or by a combination of direct and circumstantial evidence. If the evidence for plaintiff, together with all the reasonable inferences therefrom, made her theory more probable than any other, this was enough to take the case to the jury and to support the verdict. Law v. L. & N. Rr. Co., 179 Tenn. 687, 699, 170 S. W. (2d) 360; New York Life Ins. Co. v. Nashville Trust Co., 178 Tenn. 437, 159 S. W. (2d) 81; Bryan v. Aetna Life Ins. Co., 174 Tenn. 602, 130 S. W. (2d) 85; Phillips v. Newport, 28 Tenn. App. 187, 187 S. W. (2d) 965.

But if the evidence for plaintiff, together with all such inferences therefrom, made her theory no more probable than the contrary of it; if such evidence and inferences left it a matter of equal probability whether plaintiff's injuries were caused by defendant's negligence or by some other cause for which he would not be responsible; that is, if it was a matter of speculation and conjecture how the accident happened, then a verdict should have been directed for defendant. Buckeye Cotton Oil Co. v. Campagna, 146 Tenn. 389, 242 S. W. 646; Pennsylvania R. Co. v. Chamberlain, 288 U. S. 333, 53 S. Ct. 391, 77 L. Ed. 819; Nichols v. Smith, 21 Tenn. App. 478, 489, 111 S. W. (2d) 911, 918; Willis v. Heath, 21 Tenn. App. 179, 186, 107 S. W. (2d) 228, 233; Phillips v. Newport, 28 Tenn. App. 187; 187 S. W. (2d) 965, 971.

We think the evidence did leave it a matter of speculation and conjecture how the accident happened. As stated, there was no evidence of any negligent speed and no evidence of any negligent defect in the door, the handles, or the latches. The accident could have been caused by the negligence of the defendant's driver in

failing securely to fasten the door, or it could have been caused by plaintiff's falling against the handle of the door and causing it to open, in which case defendant would not be liable. The evidence affords no more probability for the former than for the latter of these suppositions. Such being the case, we are constrained to hold that a verdict should have been directed for defendant.

A judgment will be entered in this Court setting aside the verdict and judgment, directing a verdict for defendant, and dismissing plaintiff's action. The costs of the cause are adjudged against plaintiff.

Howell and Hickerson, JJ., concur.