DALE V. HORN, Plaintiff-in-Error, v. COMMERCIAL CARRIERS, INC. and JIM MATT MOONEGHAN, Plaintiffs-in-Error, and FRAKER HEATING and EQUIPMENT CO., INC., and RICHARD NIX, Defendants-in-Error.—365 S.W. (2d) 908.

Eastern Section. June 26, 1962.

Certiorari Denied By Supreme Court November 9, 1962.

Paul T. Gillenwater, Knoxville, Walter C. Rothermel, Oak Ridge, for Dale V. Horn, plaintiff in error.

Stuart F. Dye, Kramer, Dye, McNabb & Greenwood, Knoxville, for Commercial Carriers, Inc., and Jim Matt Mooneghan, plaintiffs in error.

J. H. Hodges, of Hodges, Doughty & Carson, Knoxville, for Fraker Heating & Equipment Co., Inc., and Richard Nix, defendants in error.

FRANK N. BRATTON, Special Judge. This is an action instituted by Dale V. Horn, as Plaintiff-in-error, hereinafter called Horn, against Commercial Carriers, Inc., hereinafter called Commercial, and its employee, Jim Matt Mooneghan, hereinafter called Mooneghan, and Fraker Heating and Equipment Co., Inc., hereinafter called Fraker, and its employee, Richard Nix, hereinafter called Nix, in the Circuit Court for Knox County, Tennessee, for damages. Horn was awarded a jury verdict for Seven Thousand ($7,000.00) Dollars against Commercial, Mooneghan, Fraker and Nix. Motions for New Trials were filed by Commercial and Mooneghan and Fraker and Nix, respectively. Trial Judge overruled Motion for New Trial filed by Commercial and Mooneghan, but sustained the Motion for New Trial filed by Fraker and Nix, and directed a verdict against Horn. A Motion for a New Trial of Horn challenging the action of the Trial Judge in granting a new trial for Fraker and Nix and directing a verdict in their favor was *heard* by the Trial Judge. Commercial and Mooneghan prayed and were granted an appeal in the nature of a Writ of Error, and they were allowed and granted time within which to file their appeal bond and file a Bill of Exceptions, which was done within the time allowed. Horn

prayed and was granted an appeal, and he was allowed and granted time within which to file his appeal bond and file a Bill of Exceptions, which was done within the time allowed.

We shall now briefly review the evidence and the record in the case:

Horn was driving his station wagon on 20th January, 1961, between 4:00 p.m. and 5:00 p.m., in a northerly direction on Broadway in Knoxville, Tennessee. Broadway is one of the main thoroughfares of the city of Knoxville, and was 37½ feet wide. It was divided by a center line. There were two lanes for north-bound traffic and two lanes for south-bound traffic. On this occasion, there were numerous vehicles parked next to the curb on the east and west sides of Broadway, so that for practical purposes, the lane nearest the center lane on the east was used for northbound traffic and the lane nearest the center line on the west was used for south-bound traffic. The traffic was particularly heavy on this occasion, being described by one of the witnesses as being bumper to bumper. As Horn was proceeding north, he was being followed by a tractor-trailer unit of Commercial, being driven by Mooneghan, at a distance of two to three car lengths. On this occasion, the Fraker three-quarter ton pick-up truck, being driven by Nix, was being driven south at a speed of approximately 20 to 25 miles per hour in the south-bound lane nearest the center line, meeting the Horn station wagon. When the distance between the front of the Horn station wagon and the front of the Fraker pick-up truck had closed to 5 or 10 feet, a Buick automobile with Ohio license, proceeding in a southerly direction, overtook Nix, driving the Fraker truck, and passed the Fraker truck at a speed of approximately

50 miles per hour on the right side, and in such passing, the left rear bumper of the Buick automobile in some manner caught the right front bumper of the Fraker truck and virtually pushed or threw the truck into. the path of the Horn automobile. Needless to say, a violent impact occurred. At that time, it appears that both Horn and Nix were unable to do anything in order to avoid the collision. After this collision, the tractor-trailer of Commercial, being driven by Mooneghan, struck the rear of the Horn station wagon. As a result of those collisions, Horn was severely injured. This collision occurred near the Caswell intersection with Broadway. Two young men, Roger Hicks and Johnny Hicks, were in a vehicle in Caswell Street awaiting a safe opportunity to turn into Broadway, and these young men were used as witnesses. These young men immediately gave chase to the Buick automobile, which did not stop at the scene of the collision, but the driver of the Buick automobile soon out-distanced these young men by going through a red traffic control signal at the next intersection; therefore, the driver of this Buick automobile remains unknown. Hubert Watson, an employee of the United States Post Office, who was proceeding south on Broadway on this occasion was following some distance behind the Fraker truck, testified that this same Buick automobile, which later struck the Fraker truck, had passed him, and he saw the same Buick automobile pass the Fraker truck on the right, but did not see an actual impact between the Fraker truck and this Buick automobile. The driver of the Commercial tractor-trailer unit testified that he was two or three car lengths behind the Horn station wagon driving at a speed of 20 to 25 miles per hour, and at the place where the collision occurred, the street was

level, and that he applied his brakes as soon as he saw the collision between the Horn station wagon and the Fraker truck, but could not, or at least did not, stop until after he struck the rear of the Horn station wagon and moved it and the Fraker truck approximately five feet. He further stated that his brakes were in excellent condition. Nevertheless, it is interesting to note that after the collision his brake pedal was found broken off and in the floorboard of the truck.

Commercial and Mooneghan have assigned two errors in this Court, which are in substance:

First. That there is no evidence to support the verdict against Commercial and Nix.

Second. The Court erred in charging the jury in substance and effect and Commercial and Nix were guilty of contributory negligence by the mere fact that the tractor-trailer of Commercial, being driven by Mooneghan, ran into the station wagon of Horn from the rear.

Horn assigned one error in this Court, which is in substance:

First. That the Trial Judge erred in sustaining a Motion for a New Trial filed by Fraker and Nix and directing a verdict in their favor.

As aforesaid, Horn assigned his error in the action of the Trial Judge in sustaining a Motion for a New Trial filed by Fraker and Nix and directing a verdict in their favor and filed a brief in support of the assignment.

Fraker and Nix have filed a very comprehensive and exhaustive reply brief, wherein it is forcibly insisted that the action of the Trial Judge in granting them a new trial and directing a verdict in their favor was cor-

rect and proper for numerous reasons. However, we need consider only three of those reasons; namely, (a) that a Motion for a New Trial was not *filed* by Horn challenging the action of the Trial Judge in granting a New Trial to Fraker and Nix and directing a verdict in their favor and, consequently, Horn had no right to maintain and insist upon his only assignment of error in this Court, and (b) the assignment of error and brief in support thereof does not comply with the Rules 11 and 12 of this Court because there is no statement as to the evidence in the case or where it may be found in the transcript of the record to support this assignment, and (c) the action of the Trial Judge in granting Fraker and Nix a new trial and directing a verdict in their favor was proper because there was no evidence to sustain the verdict against Fraker and Nix and in favor of Horn.

Obviously, *if Horn did not make application for a New Trial,* he does not have any right to assign as error the aforesaid action of the Trial Judge. Badger v. Tennessee Electric Power Co., 12 Tenn.App. 361; Bostick v. Thomas, 137 Tenn. 99, 191 S.W. 968.

Naturally, the Bar of Tennessee has always assumed that a Motion for a New Trial must be in writing and actually filed in order to have such a motion considered. We have read with considerable interest the cases cited in the reply brief of the Defendants-in-error, and have done quite a bit of independent research on the question. Section 27-201, Tennessee Code Annotated is as follows:

"A rehearing or motion for new trial can only be *applied for* within thirty (30) days from the decree, verdict or judgment sought to be affected, subject, however, to the rules of court prescribing the length

of time in which the application is to be made, but such rules in no case shall allow less than ten (10) days for such application. The expiration of a term of court during said period shall not shorten the time allowed.''

Naturally, the application for a new trial must be bottomed on the Code Section aforesaid. In the case of Shettles v. State of Tennessee, rehearing denied 8th December, 1961, 209 Tenn. 157, 352 S.W.(2d) 1, the Supreme Court had before it the question of whether or not a motion for a new trial was properly filed. In that case, a jury verdict was rendered on 29th June, 1960, but a motion for a new trial was not actually filed until 25th November, 1960. In a very able opinion by Mr. Justice Burnett, he quotes with approval from Caruthers' History of a Lawsuit, Gilreath, 7th Ed., of page 458 and paragraph 421, the following, with italics added:

*"In the exercise of the inherent right of all courts to prescribe reasonable rules of practice, many of the circuit courts of Tennessee now require that the motion for a new trial be reduced to writing, that it shall contain a specific statement of the grounds relied on for obtaining a new trial, and that the whole be spread on the minutes of the court, and that all errors or grounds for relief not appearing in the motion shall be considered as waived."*

This question is further complicated by reason of the fact that in the order, signed by the Trial Judge and included in the Technical Record, immediately after sustaining the motion for a new trial of Fraker and Nix and directing a verdict in their favor, the following appears:

"'* * * The Plaintiff, Dale V. Horn's Motion for a New Trial as to the Defendants, Fraker Heating and Equipment Company and Richard Nix came on to be heard on the ground that the Court erred in sustaining the Defendants' Motion for a New Trial and erred in directing a verdict in favor of these Defendants. Upon consideration of the motion, the entire record, and the Court treating the Motion as heard, the Court is of the opinion that Plaintiff's ground is not well taken.

"IT IS THEREFORE FURTHER ORDERED AND ADJUDGED that the Plaintiff's Motion for a New Trial be and the same hereby is overruled. * * *''

■ Thus, it can be seen that the same ground assigned by Horn in his Motion for a New Trial is; namely, that the Court erred in Sustaining the Motion of Fraker and Nix for a new trial and directing a verdict in their favor which is the same ground used as an Assignment of Error in this Court. The record in this case does not contain the Rules of the Circuit Court of Knox County, Tennessee, and we will not notice them, and can not notice them, unless they are proved on the trial below and incorporated in the Bill of Exceptions. We do not know, and have no way of determining, whether the Rules of the Circuit Court of Knox County, contain a requirement that a Motion for a New Trial shall be in writing when filed.

■ In Nobles v. Farmer, 9 Tenn.App. 6, a Motion for a New Trial appeared in the Bill of Exceptions, but was not identified by the Trial Judge and *was not upon the minutes of the Court.* The Court of Appeals in that case

stated that this was a substantial compliance. In the case at Bar, it appears that Counsel for Fraker and Nix approved the order overruling the Motion for a New Trial filed by Horn, so evidently, Counsel was present when this Motion was heard, and, if the Motion was not in writing as now insisted, made no objection thereto. Every presumption favors the regularity of the proceedings below and in the absence of proof we must assume on appeal either that all rules of Court were observed or waived.

In the main, in the present case, the Court *Heard* a Motion for a New Trial, overruled it and this appears in an Order signed by the Trial Judge. Therefore, we are inclined to the view that under our Statutes, this was sufficient.

The question is also made in the Reply Brief that Horn had not complied with Rules 11 and 12 of this Court in pointing out to the Court the parts of the record which sustain his position in support of his Assignment of Error. Of course, it would have been helpful if Counsel for Horn had pointed out the testimony of the witnesses who sustained his position. Naturally, this placed an additional burden upon the Court, but we are inclined to overlook this insistence.

We now come to the Assignment of Error of Horn challenging the action of the Trial Judge in granting a Motion for a New Trial filed by Fraker and Nix and in directing a verdict in their favor. In considering a Motion of a Defendant for a directed verdict and in ascertaining whether there was any evidence to support a verdict for a Plaintiff, the Plaintiff has to be given the benefit of all the evidence adduced in his behalf, and all

200

the evidence in conflict therewith has to be disregarded, and the Plaintiff is entitled to all legitimate inferences of fact favorable to him which might be reasonably drawn from the evidence tending to support his cause of action stated in the Declaration. Mutual Life Insurance Co. of New York v. McDonald, 25 Tenn.App. 50, 150 S.W.(2d) 715; Floyd v. Walls, 26 Tenn.App. 111, 168 S.W.(2d) 602; Everett v. Evans, 30 Tenn.App. 450, 207 S.W.(2d) 350; Good v. Tennessee Coach Co., 30 Tenn.App. 575, 209 S.W.(2d) 41 and Williams v. Morristown, 32 Tenn.App. 274, 222 S.W.(2d) 607.

■ We have read and reread the Bill of Exceptions in an endeavor to find evidence to sustain the verdict of Horn against Fraker and Nix, but without avail. We, therefore, conclude that there is no evidence to sustain the verdict of Horn against Fraker and Nix.

The proof shows beyond question and is uncontroverted that Nix was driving the Fraker truck south in the proper lane when the truck was struck on the right front bumper by a Buick automobile with Ohio license, and that as a result thereof, the Fraker truck was pushed into the north lane in front of Horn at a time when the distance between the front of the Horn station wagon and the Fraker truck was from five to ten feet. Under such circumstances, a collision was inevitable, but without fault on the part of the driver, Nix, or Horn. Therefore, the action of the Trial Judge in granting a new trial to Fraker and Nix and directing a verdict as to them is affirmed.

■ Now as to the Assignment of Error of Commercial and Mooneghan. The first assignment, in substance, states that there is no evidence to sustain the verdict of

Horn against Commercial and Mooneghan. We are of the opinion that there is evidence to sustain this verdict. Naturally, it could not be expected that Horn could testify as to what action Mooneghan, the driver of the Commercial tractor-trailer unit, took after the collision of the Horn station wagon and the Fraker truck because that collision was so sudden, and obviously Horn was in no condition physically to determine the course the Commercial vehicle took after the collision. As heretofore indicated, the proof showed that the Fraker truck was pushed or thrown into the path of the Horn station wagon when the time and distance between the Fraker truck and the Horn station wagon was from five to ten feet. The jury might well have found that Commercial and Mooneghan were negligent in (a) failing to have the tractor-trailer unit under reasonable and proper control in the heavy traffic, (b) in failing to take a proper precaution to avoid a collision with the Horn station wagon, (c) in driving at a rate of speed that was too great under the circumstances and traffic conditions existing at that time, (d) in failing to bring the Commercial vehicle to a stop within the two or three car lengths that Mooneghan admittedly had when the Horn station wagon stopped suddenly, or (e) that the brakes on the Commercial vehicle were not properly adjusted or that the brake pedal was even broken before the collision, or that the driver of the Commercial vehicle was not keeping a proper lookout ahead. It is most significant that Mooneghan testified that he was driving at a rate of 20 to 25 miles per hour on level ground and had two or three car lengths within which to stop and that his brakes were in good working order, but after the collision the brake pedal was found in the floor of the tractor. It is further significant that

Mooneghan never did state within what distance he could stop the tractor-trailer proceeding at 20 to 25 miles per hour. On the whole, we are of the opinion that there is ample evidence to sustain the verdict and therefore, the first Assignment of Commercial and Mooneghan is overruled.

The second Assignment of Error of Commercial and Mooneghan states simply that the Court erred in charging the jury in substance and effect that Commercial and Mooneghan were guilty of contributory negligence by the mere fact that their tractor-trailer vehicle ran into the station wagon of Horn from the rear.

In oral argument, Counsel for Commercial and Mooneghan indicated that he was complaining of the following portion of the charge, to-wit:

"* * * The operator of an automobile in a line of traffic must have that vehicle under such control and such distance from the automobile ahead of him, that when a sudden stop is made, he can bring his vehicle to a standstill without striking the one immediately in front of him. * * *"

It must be remembered that the foregoing portion of the charge complained of was taken out of context. However, a careful reading of the complete charge indicates to us that, over all, the charge thoroughly covered the issues.

The Trial Judge apparently obtained this portion of the charge complained of from Russell v. Furniture Renewal, Inc., et al., 177 Tenn. 525, 151 S.W.(2d) 1066, decided in 1961. In that case, an intersection collision occurred on a busy street in Johnson City, Tennessee.

A Mr. Hagler was driving a truck west on Main Street behind three automobiles, and the first of these three vehicles stopped in obedience to a red light, and the vehicle following likewise stopped. A Mrs. Fred Russell was driving her vehicle immediately behind the Hagler truck. The first car nearest the red light was a taxi. When the light changed from red to green, the line of traffic moved forward very slowly, and when the traffic had moved about three car lengths forward, the taxi driver stopped to discharge a passenger. The front end of the Hagler truck was about three feet from the rear of the automobile being diven by Mr. Burdick, which the Hagler truck was following. Mrs. Russell was five to six steps behind the Hagler truck and failed to stop before colliding into the rear of the Hagler truck. On the other hand, Mr. Hagler stopped short of striking the Burdick automobile before he was struck by the Russell automobile. Mr. Justice McKinney, in the course of the opinion, stated:

"[2, 3] We are further of the opinion that Hagler was not guilty of any negligence, while the plaintiff was guilty of contributory negligence in not having her automobile under control under the circumstances of this case.

"In 47 A.L.R., 703, the annotator said:

" 'The general rule is that, although ordinarily a signal warning vehicles in the rear is necessary when the vehicle in front is stopped, nevertheless there is imposed upon the operators of the rear vehicles the corresponding duty of having their vehicles under such control as to be able to stop in time to prevent running into the car ahead in case the latter

vehicle comes to a sudden stop in case of an emergency or in obedience to traffic signals.'

"[4, 5] Many cases are cited in support of the text; also, in annotations in 24 A.L.R. 508, 62 A.L.R. 970, and 104 A.L.R. 485.

"Such a rule is practical, sensible, and necessary, for it is a well-known fact that in a long, slow-moving line of vehicles the procession is likely to come to a sudden stop at any time; and it is therefore the duty of an operator of an automobile to have his vehicle under such control and at such a distance from the car ahead of him that when such sudden stop is made he can bring his machine to a standstill without striking the one immediately in front of him."

Since the facts in the case at Bar are almost identical with those in Russell v. Furniture Renewal, Inc., et al., we think the part of the charge set out above was correct and proper, and we certainly are not at liberty to belabor this point of law in the face of the opinion of the Supreme Court. Therefore, the second Assignment of Error is overruled, and the judgment in the amount of Seven Thousand ($7,000) Dollars of Horn against Commercial and Mooneghan is affirmed, with interest from 6th October, 1961, the date of the overruling of the Motion of Commercial and Mooneghan for a New Trial.

One-half (½) of the costs in this Court is taxed to Horn and the sureties on his appeal bond, and one-half (½) of the costs in this Court is taxed to Commercial and Mooneghan.

McAmis, P. J., and Cooper, J., concur.