PRINCIPI *v.* COLUMBIAN MUT. LIFE INS. CO.

(*Jackson*, April Term, 1935.)

Opinion filed July 13, 1935.

BATES, SHEA & FRAZER, of Memphis, for appellant.

ADAMS, DONELSON & POPE, of Memphis, for appellee.

MR. JUSTICE MCKINNEY delivered the opinion of the Court.

Suit on two policies providing indemnity for total and permanent disability from disease, accident, or sickness "as shall render the Assured helpless to the extent of permanently preventing him from following or directing any gainful labor, trade, occupation, business or profession." Complainant has engaged in the occupations of operating a grocery store, automobile mechanic, and truck driving, all of which require the substantial use of his legs. He is not qualified to perform any other trades or occupations. In his applications for the policies sued on he gave his occupation as that of a retail grocer.

■ ■

■ As the result of an automobile accident on January 28, 1933, complainant's right leg was crushed, causing an inflammation that had continued to the date of the trial on April 17, 1934. He has undergone two operations for the removal of dead bone, and without another serious operation there is no prospect for a recovery, and even then the physicians are unable to assure a recovery. These physicians testify that complainant is unable to do any work at the present time, and one of them states that he considers complainant totally and permanently disabled to do any work where he has to use his leg. It is further established by the evidence that as a result of said accident complainant's right arm is permanently impaired fifty per cent. We think the evidence was sufficient to take the case to the jury under the rule announced in *Metropolitan Life Ins. Co.* v. *Noe*, 161 Tenn., 335, 31 S. W. (2d), 689.

In his charge to the jury, the chancellor said:

"The question here is whether this complainant is totally and permanently disabled from following or directing his usual or customary business, or occupation, or any gainful business or occupation, for which he is qualified and fitted, in the usual and customary way."

It is insisted by defendant that the terms of the policies did not justify the chancellor in incorporating in his charge the phrase "for which he is qualified and fitted." This presents a question that has not been heretofore directly passed upon by this court, although it has been adjudicated by numerous other courts. While there is some conflict in the decisions, the great weight of authority, particularly in the more modern cases, supports

the view expressed by the chancellor in the excerpt from his charge quoted above.

A most instructive case upon the subject is that of *Hurley* v. *Bankers' Life Co.*, 198 Iowa, 1129, 199 N. W., 343, 37 A. L. R., 146, in which the Supreme Court of Iowa had under consideration a policy providing indemnity where the insured is "prevented permanently, continuously, and wholly from performing any work or following any occupation for compensation for profit." The insured was a farmer who had never had any other occupation. He had no education beyond that acquired in the public schools through the third grade. He was kicked on the leg by a horse. Three amputations were necessary, following the injury, resulting in leaving a stump of the leg five inches in length and the bone so near the end of the stump that an artificial limb could not be used, and insured was compelled to use crutches. He could drive a team, and do some chores on the farm, such as any man with one leg could do. In denying a recovery, the court, in a four to three opinion, held that the great weight of authority was contrary to their decision, and indicated that if it were a question of first impression they might reach a different conclusion, but decided that they were bound by their former decision in *Lyon* v. *Railway Pass. Assur. Co.*, 46 Iowa, 631, decided in 1877.

In *Taylor* v. *Southern States Life Ins. Co.*, 106 S. C., 356, 91 S. E., 326, L. R. A., 1917C, 910, it was held that a small farmer sixty years old, illiterate and wholly dependent for support upon his physical exertions, comes, when stricken with disease so as to be unable to do farming, within the provisions of an insurance policy maturing it when insured becomes "physically disabled, and wholly, continuously, and permanently incapacitated

from carrying on any gainful occupation," although he is able to drive a team, feed cows, run a small dairy business with the help of a boy, and make arrangements for farm purchases.

In *Foglesong* v. *Modern Brotherhood* (1906), 121 Mo. App., 548, 97 S. W. 240, 241, followed on subsequent appeal in Id. (1908), 129 Mo. App., 655, 108 S. W., 1199, where a benefit certificate provided for indemnity in case of "permanent and total disability of said member, which renders him unable to carry on or conduct any vocation or calling," the court refused to construe the provision to mean that no recovery could be had if insured was able to carry on any vocation whatever. It was there said: "But we are unwilling to adopt such a doctrine, the effect of which would be, practically, to reduce all such contracts to nullities, and to make them the instruments of extracting dues from policy holders without creating any liability on the part of the insurers. Common knowledge of the occupations in the lives of men and women teach us that there is scarcely any kind of disability that prevents them from following some vocation or other, except in cases of complete mental inertia. We have examples of persons without hearing and without sight following a vocation—some without feet, and some without hands, engaged in business. The achievements of disabled persons are seemingly marvelous. Under defendant's theory, the plaintiff might embark in the peanut trade or follow the business of selling shoe strings or lead pencils, or follow some similar calling; in which instances, under the rule invoked, there would be no disability within the meaning of the policy. In our opinion, such was not within the contemplation of the parties. In order to carry

out the intent of the parties, it is our duty to disregard the broad language used which would have the effect to defeat the purpose of the contract and render it a nullity.''

In *Metropolitan Life Ins. Co.* v. *Blue*, 222 Ala., 665, 113 So., 707, 710, 79 A. L. R., 852, it was held that the words, ''prevented from engaging in any work or occupation,'' as applied to a physician, mean prevented from doing substantial and profitable work in his profession.

In *Industrial Mutual Indemnity Co.* v. *Hawkins*, 94 Ark., 417, 127 S. W., 457, 459, 29 L. R. A. (N. S.), 635, 21 Ann. Cas., 1029, the policy provided indemnity where the disability was such as prevented the insured from ''the prosecution of any and every kind of business.'' The following instruction to the jury by the trial court was approved by the Supreme Court: ''If you believe from the evidence in the case that the plaintiff sustained an injury which of itself wholly disabled and prevented him from doing any and every kind of work pertaining to his occupation, or within the scope of his ability,'' etc.

In *Monahan* v. *Supreme Lodge, O. C. K.*, 88 Minn., 224, 92 N. W., 972, 973, it was held that under a by-law providing that when a member becomes ''totally and permanently disabled from following any occupation whatever'' he should be paid a certain benefit, one who had previously been strong and vigorous, able to do heavy manual labor, was entitled to the benefit, where he received an injury which paralyzed his leg entirely, and was otherwise disabled thereby, so that he was incapable of performing any work requiring travel or exercise; and this was held true, although the insured, at the time of the

trial, was the nominal manager of a mine, for which services he received his board.

In *Henderson* v. *Continental Casualty Co.*, 239 Ky., 93, 39 S. W. (2d), 209, where a policy provided for a sickness indemnity for a certain period during which the insured should ''be wholly and continuously disabled and prevented from performing any and every duty pertaining to any business or occupation by reason of sickness,'' it was held that the insured, who had been employed as a railroad brakeman, and had been forced to give up such employment because of color blindness which had not been caused by an accident but was due to some defect in the eyes, was totally disabled within the provisions of the policy, although he was capable of performing, and did thereafter perform, work in other occupations which did not require a color sense on his part.

It was held in *Metropolitan Life Ins. Co.* v. *Lambert*, 157 Miss., 759, 128 So., 750, affirming a verdict for the insured, that if the physical condition of the insured as the result of an injury sustained while engaged in his occupation as car repairer was such that, in order to effect a cure, common care and prudence required that he cease attempting to work, he was totally disabled within the meaning of a policy providing for indemnity in case the insured was totally and permanently disabled so as to be prevented from engaging in any occupation and performing any work, and it was also held that the fact that the insured had engaged, since his injury, in employment as a night watchman, did not necessarily indicate that he was not totally disabled within the meaning of the policy, where such employment was of an easy

character, and the insured could sit most of the time while discharging it.

Other cases are listed in the annotation in 79 A. L. R., 857, 862, and preceding annotations there referred to.

With respect to this character of insurance contracts there are running through the authorities two rules of construction, one applying a strict, and the other a liberal, interpretation. This court is committed to the latter. *Burrell* v. *Provident Life & Acc. Ins. Co.*, 162 Tenn., 672, 39 S. W. (2d), 1031; *Pacific Mutual Life Ins. Co.* v. *McCrary*, 161 Tenn., 389, 394, 32 S. W. (2d), 1052, 1053. In the latter case it was said:

"We cannot agree to the contention of learned counsel for the insurance company that the definition of total permanent disability in this policy implies an absolute and entire lack of earning power on the part of the insured. Such a condition would be one of complete inertia, mental and physical, and we do not think such condition was contemplated in the contract of insurance as a prerequisite to recover for permanent total disability."

In *Industrial Mutual Indemnity Co.* v. *Hawkins, supra,* it was said:

"The general object of such a contract as is involved in this case is to furnish to the insured an indemnity for the loss of time by reason of the injury which prevents him from prosecuting business. Its evident purpose is to secure him means of living during the time that he is unable to earn a livelihood. The language employed in this provision of the policy is for the purpose of defining what will constitute a total disability to earn a livelihood. . . .

"Total disability is necessarily a relative matter, and must depend chiefly on the peculiar circumstances of

each case. It must depend largely upon the occupation and employment and the capabilities of the person injured."

In that case several decisions were cited approvingly to the effect that total disability would occur where the party was prevented from following an occupation whereby he could obtain a livelihood, and that, in determining whether such a disability exists in a given case, both the mental and physical capabilities of the insured should be considered.

It is unnecessary to pursue this question further, since these matters have been settled by the verdict of the jury. In the cases cited hereinabove it is generally stated that the court cannot formulate a rule applicable to every case that may arise, but that each case must be determined upon its own peculiar facts and circumstances.

██ ██ The two following rules for determining liability are applicable:

First, as a condition of recovery, it must appear that the insured is incapacitated to earn, not only in his chosen, or previously formed occupation, but in any other to which he may be reasonably fitted.

Second, to defeat recovery on the ground of earning capacity, it must appear that the remaining capacity to earn, despite disability, is a capacity to earn substantially. No scintilla rule applies. The earning capacity remaining must bear some reasonable relation to the natural or previous capacity to earn, against loss of which it is the purpose of the policy contract to insure.

██ In the instant cause it appears that the insured is only thirty-five years of age, is of foreign birth, with a limited education, has a wife and two children, and there is evidence that he is permanently disabled from follow-

ing or directing any business for which he is qualified and fitted. In these circumstances a research of the authorities discloses no case where a recovery was denied. These policies provide for monthly indemnity which shall cease when insured recovers from his disability; so that if a recovery is effected, the company will only have to pay for the period of the disability.

Counsel for defendant seems to attach some significance to the provision of the policies that insured is not totally disabled if he is capable of directing a business. The evidence shows that insured is unable to direct his grocery business, and for that reason had to dispose of it. From the excerpt of the charge, quoted above, it will be noted that this issue was squarely presented to the jury, and there is not only evidence to support their finding, but there is none to the contrary.

■ Exception was taken to the testimony of Dr. Blecker to the effect that insured was totally and permanently disabled to do any work where he had to use his leg, the contention being that this was a conclusion upon the issue which the jury were to decide. Dr. Blecker was the regular physician of insured who had charge of his case from the date of the accident. This question was ruled adversely to defendant's contention in *National Life & Accident Ins. Co.* v. *Follett*, 168 Tenn., 647, 80 S. W. (2d), 92, 95.

We find no reversible error on the record, and therefore deny the writ.