PATTON *v.* PRUDENTIAL INS. CO. OF AMERICA.

(*Jackson*, April Term, 1943.)

Opinion filed March 4, 1944.

McDONALD, McDONALD & KNAPP and JOHN A. OSOINACH, all of Memphis, for complainant.

CANALE, GLANKLER, LOCH & LITTLE, of Memphis, for defendant.

MR. JUSTICE CHAMBLISS delivered the opinion of the Court.

This suit was brought to enforce collection of a claim for total and permanent disability based on a provision of a policy of insurance issued to complainant by the defendant Company, the pertinent portion reading:

"If the insured shall become totally and permanently disabled, either physically or mentally, from any cause whatsoever, to such an extent that he (or she) is rendered wholly, continuously and permanently unable to engage in any occupation or perform any work for any kind of compensation of financial value during the remainder of his (or her) lifetime, . . . the Company, upon receipt of due proof of such disability, will grant the benefits hereinafter specified," etc.

The disability asserted was alleged to have resulted from a diseased condition of the eyes which caused complainant such pain that his use of them was so impaired that he was "rendered wholly, continuously and per-

manently unable to engage in any occupation or perform any work for any kind of compensation of financial value during the remainder of his life time.'' ·

Complainant is 53 years of age and resides in Memphis, where he was formerly engaged in the seed business. From 1932 through 1937 he owned and operated a large farm near Memphis, where he had tenants and handled cattle. Since that time he has not engaged in any fixed occupation, but looks after his investments. He has been twice married, the second time in 1936, following a divorce from his former wife. He asserts he gave up his farming because of his eye trouble and is not able on that account to fill an executive position, for which he is trained. He goes about freely, unattended, and owns and drives a car.

The Chancellor heard the case on oral testimony and dismissed the bill, finding and decreeing as follows:

''That the complainant did not suffer from any total and permanent disability at the time of the filing of the bill herein, or the trial of the cause, or at any time prior thereto, within the meaning of the terms and provisions of the policy sued upon, or in any other manner.

''The Court further finds, under the complainant's own proof, particularly his own testimony and that of his medical witnesses, taken in the most favorable light, that complainant is suffering from a permanent partial disability not covered by the policy sued upon.''

In additional findings of fact recorded by the Chancellor he found that during the two days of the trial complainant read printed and typed matter under artificial light without inconvenience and without watering or reddening of the eyes; that his eyes were normal in appearance and his conduct and actions in the Court

room indicated normal eyesight. It thus appears that the very limited extent of complainant's eye impairment was so found by the Chancellor after not only hearing orally all the witnesses, but after personally witnessing the complainant in the Court room during the trial, and seeing him there examined by one or more of the eye specialists, and hearing their testimony that his eyes, observed under bright artificial lights, gave no objective or observable evidence of material impairment of use. To this extent, therefore, he was not only a trial Judge, but an eyewitness, a situation which this Court has repeatedly recognized as affording strong support to the factual findings of trial judges in compensation cases.

The Court of Appeals reversed, holding that the claim of complainant was sustained by a preponderance of the evidence. This Court granted *certiorari* and able and interesting argument has been heard. The sole issue presented is whether or not complainant is totally and permanently disabled within the terms of the policy.

While claiming to be totally disabled from engaging in any gainful occupation solely because of this condition of his eyes, he makes no pretense of being blind. He makes no claim of any defect in vision, but concedes his sight to be excellent except at periods and in the particular hereinafter described. He says he can drive his car and does so daily, but for short distances only without discomfort and pain; that he can read his morning paper, but for not more than fifteen or twenty minutes at a time without experiencing trouble with his eyes and having to rest them. He goes about in the City as he chooses, unattended, seeing his way without difficulty, associating daily with his friends and spending much time in his stock broker's office, keeping up with the daily

markets. His chief medical witness, Dr. Anthony, testi-
fied that he had normal vision, at both near and far distances.

These basic conceded facts have invoked a careful search of this record for the grounds supporting the conclusion of the Court of Appeals that he is totally disabled within the contemplation of the parties to this insurance contract. And, it may be remarked, in the outset, that we have no case in which liability for total disability has been adjudged upon the sole ground of a limited impairment of eye use.

In our leading case of *Pacific Mut. Life Ins. Co.* v. *McCrary*, 161 Tenn., 389, 32 S. W. (2d), 1052, 1053, relied on by the Court of Appeals, the insured was "afflicted with tuberculosis and myocarditis," a serious disease of the heart; with "little or no chance of recovery." Opinion 161 Tenn. at page 391, 32 S. W. (2d) at page 1053. Further, "he was confined to his house." Opinion 161 Tenn., at page 393, 32 S. W. (2d), at page 1053.

It is plain that a recovery on such facts constitutes no precedent for a recovery where the insured suffers only from a limited impairment of the use of his eyes, being otherwise, as shown without dispute, in excellent health. In relying on language used in an opinion, it is important to consider, not only the context, but the factual situation being dealt with. The Court of Appeals in this case quotes from an opinion by Judge KETCHUM in *Riggs* v. *Mutual Life Ins. Co.* (Tenn. App.), 172 S. W. (2d), 1017, 1023, in which he discusses the opinion of this Court in *Pacific Mut. Ins. Co.* v. *McCrary, supra,* and makes this comment: "In that case the insured who was a physician was held to have been totally disabled although he was able to carry on the occupation of a

farmer and cattle dealer, and also loaned money and sold land.''

Now, what Chief Justice Green said in his opinion in the *McCrary Case*, 161 Tenn. at page 393, 32 S. W. (2d), at page 1053, was that: ''He was *not* able to carry on these undertakings in substantially his usual or customary manner nor to perform substantially the material acts necessary to the prosecution of such enterprises, nor does it appear that he was able so to follow any other calling.'' The opinion had just before summarized the evidence which, it was said, ''tends to show that he was unable to ride or get about over his farms; that he was confined to his house . . . that he gave no personal supervision to such operations . . . that insured never looked at the cattle bought,'' and ''was not able to give personal attention to the care of the cattle.'' Then the Court said: ''Under such circumstances, although he may have derived a profit from his cattle and his farms, the insured was none the less totally disabled, in the sense of the law, from performing the work or pursuing the occupation of a farmer or cattle dealer. He was not able to carry on these undertakings,'' etc., as we have quoted above.

With all deference to this learned Judge of the Court of Appeals, we think he has given much too liberal an interpretation to what was said in the *McCrary Case*. We make this comment just here, because it appears that the writer of the opinion of that Court in the instant case has adopted and been influenced by the above quoted statement by Judge Ketchum of the holding in the *McCrary Case*, in reaching the conclusion announced by that Court in the instant case.

It is true that in this McCrary opinion, and re-affirmed in the later case of *Principi* v. *Columbian Mut. Life Ins.*

*Co.*, 169 Tenn., 276, 84 S. W. (2d), 587, 589, it was recognized that this Court is committed to a liberal, rather than a strict construction of insurance contracts of this class; and, as said in those cases, it is settled that the definition of total permanent disability referred to in this policy does not imply "an absolute and entire lack of earning power on the part of the insured."

██ ██ In the *Principi Case*, 169 Tenn. at page 284, 84 S. W. (2d) at page 590, after a review of many authorities, the following two rules for determining liability were laid down:

"First, as a condition of recovery, it must appear that the insured is incapacitated to earn, not only in his chosen or previously formed [followed] occupation, but in any other to which he may be reasonably fitted.

"Second, to defeat recovery on the ground of earning capacity, it must appear that the remaining capacity to earn, despite disability, is a capacity to earn substantially. No *scintilla* rule applies. The earning capacity remaining must bear some reasonable relation to the natural or previous capacity to earn, against loss of which it is the purpose of the policy contract to insure."

It is by these rules, then, that liability in the instant case must be tested. In that case it was also said that, "each case must be determined upon its own peculiar facts and circumstances." Just here it may be added, that a proper case for the jury was held in the *Principi Case* to have been shown when the insured's right leg had been crushed so badly in an auto accident that he had undergone two operations and a third, with doubtful results, was necessary; also that his right arm had been permanently injured, and that the proof was that he was unable to do any work and that his disability was complete and permanent.

Before passing to a more detailed examination of the "peculiar facts and circumstances" of the instant case, we refer to the two cases from this jurisdiction mentioned in the opinion in *Pacific Mut. Ins. Co.* v. *McCrary*, *supra*, as in accord with that decision, *Watkins* v. *United States Casualty Co.*, 141 Tenn., 583, 214 S. W., 78, and *Gordon* v. *United States Casualty Co.* (Tenn. Ch. App.), 54 S. W., 98. The *Watkins Case* is cited as holding that, "there is an entire loss of sight when the eye becomes useless, although a slight light perception remains." However, the Court was not dealing with total and permanent disability of the insured to earn, but with a claim only for loss of one eye under a policy providing for lump payment for the loss of one eye. It was not intended to imply that the loss, even if total, of one eye, would support a claim for total and permanent disability to earn. The reference to this case of the loss of one eye was only to illustrate the rule announced that total disability occurs when the disability is substantially total.

In the *Gordon Case*, while the injury was to one arm only, liability for total *temporary* disability was sustained for the period sued for, on proof that the insured had a severe fracture, suffered great pain, became greatly debilitated and his general health impaired, so that he had been unable to work. No claim for total and permanent disability was involved.

On the hearing before the Chancellor, complainant and his wife and a daughter testified, and he also introduced medical testimony. The Chancellor was of opinion that while partial disability was shown, the testimony of complainant himself and that of his own witnesses did not show total disability. We have examined to see if the Chancellor misconceived the rule and applied too narrow

a construction to the word "total," which, as above shown, is not to be taken in its absolute, but its relative or substantial sense, and as affording a basis for recovery whenever incapacity to earn in any occupation "to which he may be reasonably fitted" is shown.

Addressing ourselves to this determinative inquiry, it is conceded, as above shown, that complainant's loss of *sight* is not *total*, in even the most liberal sense of the term. His own testimony supports that of his chief medical witness that his vision, his capacity to see, at both short and long range, is normal.

He defines his eye complaint as chronic conjunctivitis, accompanied by a burning and itching sensation, at times both annoying and painful, of periodic, or variable, intensity. Reading for more than a short time, or exposure to strong light, or to wind and dust, will result in pain and call for rest and alleviating treatment. His witness, Dr. Anthony, read from and approved a leading text book on "Diseases of the eye," a paragraph opening: "Chronic catarrhal conjunctivitis, frequently a disease of symptoms with little to show for them, is nevertheless an important clinical entity in that it is the cause of a great deal of protracted *discomfort and annoyance*." (Italics supplied.) There can be no doubt that complainant's eye trouble thus affected him. But this is far from such a disqualification to earn as the contract sued on makes provision for.

Several references are made to complainant's inability to visit picture shows. It is no wonder that such use of eyes, weakened by any degree of conjunctivitis, or like malady would aggravate the trouble. Gazing steadily on moving pictures subjects perfectly good eyes to strain.

His daughter testified that after driving his car at night from Little Rock to Arlington, Tennessee, a distance

of approximately 150 miles, her father suffered with his eyes for two days. His wife testified that he cannot drive a car for more than an hour without resting his eyes. Now, capacity to drive a car on the highways is recognized as a test of good eyesight. License to drive is issued only upon a satisfactory showing of good eyesight. And it is well known that driving a car puts a strain on the eyes. One who can drive at night and for an hour in the day, without resting the eyes, has fairly good eyes. Certainly, none of this affords evidence of either substantially total incapacity to see, or to earn. The same may be said of complainant's proof that he cannot read his morning paper for more than a short time without inconvenience, and that working over his income tax returns brought on trouble with his eyes. The latter, especially, with its close and fine print, is a notoriously difficult task and trying on both the eyes and the nervous system. That Mr. Patton is able to use his eyes to any appreciable extent for such purposes is a fact which militates against, rather than sustains, his claim that his eyesight is so impaired as to destroy his capacity to earn. He testifies at some length of his experience in operating his farm, the last profit earning occupation he appears to have followed. He says he found the sunlight exposure incident to riding over his farm and inspecting its operation aggravated his trouble. And that keeping books incident to rental of and otherwise operating the farm was too hard on his eyes. This does not show even substantially total incapacity to earn in this manner. No showing is made of conditions even approximately similar to those appearing in the McCrary case, which is relied on as authority. In that case, as we have shown, the insured was afflicted with tuberculosis and a serious heart

malady. He was confined to his house. Was unable to see the cattle he dealt in, or to give any personal super-vision to his farming operations.

We do not question that Mr. Patton has suffered for years, at some times much more than at others, pain and annoyance from this trouble with his eyes and that his free use of them is restricted, but, after a careful reading of his testimony and that of his wife and daughter, we think this the extent shown thereby of his eye use impairment; and this, in our opinion, makes out a partial, rather than a total impairment of capacity to see and to earn.

Looking to the medical testimony given by Doctors Anthony, Simpson, Leroy and Ellett for complainant and Doctors Shea, Lewis and Rychener for defendant, we find its substance to the same general effect. There is little conflict. Viewed in its most favorable aspect it shows no more than a partial and periodic loss of the use of the eyes, with a consequent partial loss of earning capacity. This distinction between partial and total is a vital one, that must be observed. However liberally we construe the term "total," this standard insurance contract is clearly limited in its coverage to *total* and does not extend to *partial* disability.

A summary and an analysis of this medical testimony, in more or less detail, will be found in a memorandum handed down herewith, for the benefit of counsel particularly interested in the facts of the case, but which it is not thought necessary to greatly lengthen this opinion by incorporating herein.

Summarizing all of the evidence, we find a man of 53, with excellent general health, and normal vision, claiming to be totally and permanently disabled from

earning by reason of an affection of the eyes which produces pain and demands rest and alleviating treatment when the eyes are used for extended periods in reading and car driving, or when exposed for such periods to strong light or wind, etc.; that symptoms of this condition to which he testified are not ''objective,'' but are subjective, that is, supported by his statements, rather than by what examining experts themselves can see, or observe; that if his trouble is within the definition of *conjunctivitis*, as claimed, this is of a mild type, which no medical expert testifies to having even known to incapacitate to earn a livelihood.

We know of no authority, or justification, on such facts, for extending liability for total disability under the terms of the contract sued on, giving to these terms the most liberal construction fairly applicable. We find it necessary to reverse the decree of the Court of Appeals and, confirming the Chancellor, dismiss the bill.