650

# VERBON E. ALLEN v. THE PAUL REVERE LIFE INSURANCE COMPANY.—423 S.W.(2d) 504.

Eastern Section. February 23, 1967.

Certiorari Denied by Supreme Court June 19, 1967.

Petition to Rehear Denied September 18, 1967.

Claude K. Robertson, Fowler, Rowntree & Fowler, Knoxville, for appellant, The Paul Revere Life Insurance Co.

Asbury & Asbury, Jacksboro, for appellee, Verbon E. Allen.

COOPER, J. Complainant Verbon E. Allen brought this suit in the Chancery Court of Anderson County seeking to recover total disability benefits allegedly due under two policies of insurance issued by the defendant, The Paul Revere Life Insurance Company.

The defendant admitted that it issued the policies in question and that they were in full force and effect at the time the complainant suffered the injury on which he based his suit, but denied that it was indebted to the complainant contending (1) that the complainant was not "totally disabled" within the policy definition of that term, (2) that complainant's disability, if now total, had not been continuous since the time of the accident as required by the policies, and (3) that all benefits due under the policies had been paid.

The Chancellor tried the case, partly on oral proof and partly by deposition, and found that the complainant had been continuously and totally disabled from September 8, 1958, the date of the accident, to the date of trial and awarded complainant benefits under both policies of insurance. The Chancellor further ordered the defendant to "specifically perform its contract of insurance with

complainant so long as his total disability resulting from said injury shall continue * * *''

The defendant has appealed contending (1) that the evidence preponderates against the Chancellor's findings and (2) that the Chancellor erred in refusing to permit the defendant to examine the complainant as to (a) complainant's emotional instability and any disability resulting therefrom, and (b) complainant's settlement of the workmen's compensation claim resulting from the September, 1958, accident on the basis of a permanent partial disability rather than total disability. No issue is taken with the benefits awarded if, in fact, complainant is entitled to said benefits.

The policies of insurance issued by the defendant provide, among other things, that where the insured sustains an accidental injury which results ''in continuous total disability within ninety days from the date of the accident, requiring the regular and personal attendance of a licensed physician, the Company will pay the Monthly Indemnity during the continuance of such total disability, commencing on the first day thereof and for a period not exceeding thirty months for any one continuous disability.'' One policy has a rider extending the period of payment of benefits beyond the 30 month period set out in the policies, and provides for payment ''so long as the insured lives and suffers continuous total disability, as defined in such policy.'' (This rider is the crux of the suit as it is conceded by the parties that the indemnity benefits provided in the body of the policies have been paid except for a nominal sum).

Total disability, as defined in the policies, is the ''complete inability of the insured to engage in gainful occupa-

tions for which he is reasonably fitted by education, training and experience.''

Plaintiff, according to the record is 46 years of age, has a 4th grade education and has worked, in the past, as a sawmill worker, a truck driver, a farmer, and as a carpenter and carpenter's foreman. All these occupations require a great amount of physical labor and little formal education.

In September, 1958, the plaintiff suffered a low back injury while working as a carpenter's foreman for Alonzo Cothron, Inc. Subsequent medical examination revealed that complainant had a congenital defect known as spondylolisthesis of the fifth lumbar vertebra with grade one slipping, and that it was aggravated by his injury.

This condition required surgery, which was performed by Dr. Leon J. Willien. Dr. Willien described the operation as ''an exploratory laminectomy and spine fusion''. Bone used in the fusion was taken from the back of complainant's pelvis.

Dr. Willien continued to follow the progress of the complainant after he was released from the hospital following the operation. The examinations by Dr. Willien prior to October 12, 1959, revealed evidence of movement, or slipping, of the spine between the 4th and 5th lumbar vertebrae and between the 5th lumbar vertebra and the sacrum, indicating that the fusion was not yet solid. During this time, Dr. Willien was of the opinion that the complainant was totally disabled.

On October 12, 1959, X-rays taken by Dr. Willien showed no motion in the area of the fusion and, as a consequence, Dr. Willien concluded that the operation

was successful and complainant had reached maximum recovery. Dr. Willien then estimated plaintiff's residual disability from the injury and operation as being 20% of the body as a whole.

The defendant company, in accord with the reports from the surgeon, paid total permanent disability benefits from the date of injury to October, 1959, and partial disability benefits for a 6 month period thereafter as provided by the policy.

Complainant continued to complain of intense pain in the low back, but attempted to return to work as a carpenter and as a carpenter foreman in the spring of 1960.

Complainant's first job was with "Michaels", a construction company building a hospital in Anderson County. According to complainant, the company needed supervisors badly and assigned him to do lay-out and carpentry work, but that he was unable to do the work and was discharged within a short time.

Complainant then learned that the project manager of a job on which complainant had worked satisfactorily in the past was the assistant project manager on a government housing project in New Jersey, and applied to him for employment. As the result, complainant was employed by the Terminal Construction Corporation, Woodridge, New Jersey, "to take care of the trim work on the housing project." Complainant, however, was unable to be on the job or to do the work when he was there; consequently, he was discharged.

Complainant later secured employment as a carpenter foreman or supervisor with Alonzo Cothron, Inc., for whom complainant was working at the time of his injury.

In describing his duties and his ability, or rather inability, to work, complainant stated:

"We went down there, and Dr. Pressly thought that climate might be good for my back, and I went down there and went back to work for the company that I had worked for for, approximately, 9 years, the same type of work, only at this time there was enough work going on that I didn't have to use my tools. I would get up in the morning, and I would go down the highway and check with the foremen and men on the job. I would come back to the house and lay down for awhile, and then I would have to go up the road and check with them. Whenever they wanted to know anything or find out anything, they would come to the house."

Complainant again was discharged because of his inability to stay on the job.

Complainant returned to his home in Anderson County and sought medical treatment for his low back pain. As the result, complainant was hospitalized in February, 1961, by a Dr. O'Brien with complaints of arthritis involving most of his peripheral joints and of difficulty in the low part of his back, and claim was made for payment of total disability benefits under the policy.

Dr. Willien was again called upon by the defendant to examine the complainant, and, in February, 1961, he found no evidence of arthritis or any indication that complainant's fusion operation had not been successful. It was Dr. Willien's opinion that the principal cause of complainant's difficulty was his emotional instability.

The defendant, however, paid total disability from the time of hospitalization until January, 1962.

Complainant continued to complain of intense pain in the low back. During 1962, he was examined, either at his own request or at the request of the defendant, by Dr. Robert G. Brashear, Dr. C. Sanford Carlson, and Dr. Leon J. Willien. None of these doctors found any objective evidence that complainant had more than a residual partial disability from his earlier back injury and the resulting fusion operation. Each examining physician was of the opinion that the spinal fusion had been successful, and estimated that the complainant had only a 20% partial disability as the result of his earlier injury.

These doctors were called upon to re-examine complainant in 1964, while this suit was pending. Dr. Willien, who performed the fusion operation, and was the treating physician thereafter, testified that X-rays taken by him during the course of the examination revealed definite evidence "that the original spine fusion operation * * * had not become solid, that there was a failure of the new bone to go between the extent of the fusion which extended from the fourth lumbar vertebra to the sacrum." Without the solid fusion, according to Dr. Willien, the complainant had a 40% functional disability of the body as a whole and could not do manual labor or work as a carpenter. On inquiry as to the limitations the disability would place on the activities of the complainant, Dr. Willien testified that complainant could not lift, climb ladders, stand for any extended period of time, or drive or ride in an automobile for a considerable distance. Dr. Willien also testified that complainant's continual complaints of pain were compatible with his finding that the spine fusion had not become solid.

Dr. Brashear and Dr. Carlson found no evidence that the spine fusion had not been successful. It should be

noted, however, that there is no indication in the record that either of these doctors were shown the X-rays taken by Dr. Willien.

The defendant, pointing to the fact that complainant worked during the period of claimed total disability, insists that the necessary continuity of the disability was thus broken, and that complainant must be denied recovery under the policies.

■ The fact that complainant returned to work is a factor to be considered in determining if he, in fact, was "continuously totally disabled" as required by the policy, but is not conclusive.

■ Generally, and it is a common-sense application of the policy provisions, "where an accident policy includes the element of continuity and undertakes to insure only for loss resulting from injuries that 'continuously' disable insured, the word 'continuously' means regularly, protracted, enduring, and without any substantial interruption of sequence, as distinguished from irregularity, spasmodically, intermittently or occasionally. 'Continuously' does not mean constantly, nor does it denote ceaseless and absolute continuity. Thus, under such a policy, the continuity of the disability is not broken by the fact that insured returns to his work at long intervals, and for only short periods, while still suffering from the injury; but the continuity is broken where insured for protracted periods after the injury performs his regular duties." 45 C.J.S. Insurance sec. 901(d), p. 995.

The evidence in this case relative to complainant's attempts to work shows that he returned to work on the advice of his doctor, who then thought the fusion operation had been a success. While on the job, complainant

was unable to perform his regular duties and was discharged, or replaced, because of his inability to do so. Dr. Willien, in testifying as to limitations on complainant's activities resulting from the failure of the fusion to take place, stated unequivocally that the complainant could not do any form of manual labor—the only type work complainant was qualified by education, training and experience to do.

From this, we find as a fact that complainant was not physically able to perform the duties required by his employment, nor was he able to perform the duties of "any gainful occupation for which he is reasonably fitted by education, training or experience," and that his attempt to work did not break the continuity of his disability.

It is further urged by the defendant, in argument, that the complainant was not totally disabled within the policy definition of that term in that the medical proof shows complainant was physically able to assist his wife in the management of her tavern. We do not agree that this is a proper interpretation of the proof in view of testimony by Dr. Willien that the complainant could not stand for any extended period of time, and the testimony of complainant and his wife that he had been unable to help his wife in the tavern in the past.

Then too, it must be borne in mind that total disability does not imply "an absolute and entire lack of earning power on the part of the insured." Patton v. Prudential Ins. Co. of America, 181 Tenn. 138, 178 S.W.2d 760, 1 A.L.R.2d 750. In order "to defeat recovery on the ground of earning capacity, it must appear that the remaining capacity to earn, despite disability, is a capacity

to earn substantially. No scintilla rule applies. The earning capacity remaining must bear some reasonable relation to the natural or previous capacity to earn, against loss of which it is the purpose of the policy contract to insure.'' Principi v. Columbian Mut. Life Ins. Co., 169 Tenn. 276, 84 S.W.2d 587, 590. There is no such showing in the present case.

We find from the above evidence, as did the Chancellor, that the complainant suffered an accidental injury necessitating a spine fusion, that the operation was not successful in that fusion did not become solid and that, as the result, the complainant has been continuously totally disabled from performing any gainful occupation for which he is reasonably fitted by education, training and experience.

Defendant's remaining assignments of error are directed to the Chancellor's rulings on the admission of evidence.

The record shows that the trial court refused to permit defendant to cross-examine the complainant as to his emotional instability on the ground that it was outside the scope of defendant's pleadings. We disagree. However, we see no prejudicial error in the court's ruling as the Chancellor permitted the introduction of medical testimony on the issue. The medical testimony was considered by us in arriving at our decision that complainant's disability was due to his back injury.

The record also shows that the Chancellor ruled that testimony of the complainant that he had settled his workmen's compensation case growing out of the September, 1958, accident on the basis of a permanent partial disability was immaterial. We think such evidence was

material to the issues in the case. Fortunately, the objection to the introduction of the evidence was not made until after the complainant had testified and his statements were included in the record. This testimony by the complainant was considered by us in making our finding of facts.

The decree of the Chancellor is affirmed. Costs incident to the appeal are adjudged against the defendant and his surety.

McAmis, P. J., and Parrott, J., concur.