**D.J. HODGE (Appellee), Plaintiff,**

v.

**PROVIDENT LIFE AND ACCIDENT INSURANCE COMPANY (Appellant) and Protective Life Insurance Company (Appellee), Defendants.**

Court of Appeals of Tennessee, Western Section, at Jackson.

Nov. 9, 1983.

Permission to Appeal Denied by Supreme Court Jan. 30, 1984.

William E. Walsh, Memphis, for plaintiff-appellee.

Elmore Holmes, III and Jon P. McCalla, Memphis, for defendant-appellant.

James N. Clay, III, Memphis, for defendant-appellee.

HIGHERS, Judge.

The plaintiff (Hodge) brought suit against Provident Life and Accident Insurance Company (Provident) and Protective Life Insurance Company (Protective), alleging that one or both of these companies owed him disability benefits under a group policy of insurance procured through his employment with the Deutz Corporation in Memphis.

The Deutz Corporation maintained group insurance with Protective until April 1, 1975. On that date the coverage was assumed by Provident.

Hodge suffered a heart attack on February 1, 1975, and he was admitted to the hospital on February 5. He returned to his job on a part-time basis as operations manager of the Memphis office of the Deutz Corporation on March 1, but was readmitted to the hospital from March 4 to 12 for treatment of angina pectoris. He was hospitalized again from April 6 to 9. From the beginning of May, Hodge returned to work on a full-time basis. He was advised by his physician to undertake no emotionally stressful or physically strenuous activity. His supervisor at work had already delegated some of Hodge's duties to other employees. At this same time, however, Hodge did assume the responsibilities of one of the employees who had left the company.

On August 6, 1975, Hodge was again admitted to the hospital after a serious episode of nausea and vomiting. After his return to work, he was relieved of his job as operations manager but was allowed to continue on the payroll as a consultant with no specified responsibilities. He remained in this status until the Memphis office of the Deutz Corporation was closed in July 1976 at which time he instituted this action for disability benefits.

It is the position of Provident that total disability occurred in February 1975 at the time of the heart attack and that Protective is liable for all claims. Protective, on the other hand, contends that total disability

did not commence until August 1975 and that Provident is solely liable.

The Chancellor, sitting without a jury, made findings in the case which included the following:

The Court finds that the plaintiff could no longer perform the duties of his occupation after his angina attack on August 6, 1975, and that such incapacity continued until the time of the hearing. The Court further finds that it is the contention of the plaintiff that he has sustained a disability permanent in nature, as the result of his myocardial infarction in early February, 1975, and the ischemic heart disease with angina pectoris from which plaintiff has continued to suffer, and the Court so finds from all the proof that the plaintiff has in fact sustained a disability permanent in nature, and that this disability is such that he is and will be unable to engage in any business or occupation or to perform any work for compensation, gain or profit for which he is reasonably fitted by education, training or experience, and that such condition is permanent. Though the myocardial infarcation resulted in physical damage to plaintiff (before the termination of Protective's coverage), the extent of disability did not reach the full stage of totality and permanence until August, 1975, during the period of Provident's coverage.

The findings of fact by the trial court without a jury are presumed to be correct unless, it is found upon a *de novo* review of the record, that a preponderance of the evidence indicates a contrary conclusion. Rule 13(d), T.R.A.P. Thus, the issue before this Court is whether the evidence preponderates against the finding of the Chancellor that total disability within the meaning of the policy did not occur until August 1975.

In reviewing the finding of the Chancellor it must be noted that Hodge returned to work on a full-time basis on May 1, 1975, and that he continued in that capacity through May, June, and July, working sometimes from ten to eleven hours per day. With respect to his duties during this period of time, Hodge gave the following testimony:

Q. During the period of May, June, and July, did you perform the functions of your job as Operations Manager?

A. Yes, sir, I did.

Q. Did you perform on a full-time basis?

A. Yes, sir, I did.

Further, the treating physician testified that the disability was formed "somewhere in the summer of '75. . . ."

The policy of Protective defined total disability as "the continuous inability of an Employee to engage in each and every occupation or employment for wage or profit for which he is reasonably qualified by education, training, or experience." In *Allen v. Paul Revere Life Insurance Company*, 57 Tenn.App. 650, 423 S.W.2d 504, 508 (1967), the Court stated:

Generally, and it is a common-sense application of the policy provisions, "where an accident policy includes the element of continuity and undertakes to insure only for loss resulting from injuries that 'continuously' disable insured, that 'continuously' means regularly, protracted, enduring, and without any substantial interruption of sequence, as distinguished from irregularly, spasmodically, intermittently or occasionally. 'Continuously' does not mean constantly, nor does it denote ceaseless and absolute continuity. Thus, under such a policy, the continuity of the disability is not broken by the fact that insured returns to his work at long intervals, and for only short periods, while still suffering from the injury; but the continuity is broken where insured for protracted periods after the injury performs his regular duties." 45 C.J.S. Insurance § 901(d), p. 995.

Provident contends that Hodge returned to work as an experiment to determine the extent of his disability and that his return to work does not of itself settle the question of whether he was totally disabled. We agree that his return to work was not conclusive of the question, but it is "a factor to be considered in determining if

he, in fact, was 'continuously totally disabled' as required by the policy...." *Allen v. Paul Revere Life Insurance Company, supra.* The trier of fact could consider his return to work, how long he remained in place, and what type of duties he performed, along with all other factors in the case including the testimony of Hodge himself, the medical evidence, and the testimony of others, in determining the point at which he became totally disabled. The fact that he returned to his employment for three full months, doing substantially his regular work, and that he worked continuously during this period, indicates more than a return "at long intervals, and for only short periods." We are of the opinion that the evidence does not preponderate against the finding of the Chancellor that Hodge did not become totally disabled until August 1975 at which time Provident afforded coverage under its policy.

Our attention has been directed to *Continental Casualty Company v. Equitable Life Assurance Society of the United States,* 52 N.Y.2d 228, 437 N.Y.S.2d 279, 418 N.E.2d 1298 (1981), which is described as a "shared liability" case, and we have been urged by appellee Hodge's brief to adopt its rationale. In that case Continental (like Protective) had a group policy of insurance covering disability which expired on June 30, 1976, at which time Equitable (like Provident) assumed coverage. The question arose as to "which insurer is responsible to pay the disability claims of employees who became disabled during the term of Continental's policy, but who suffered a recurrence within six months of this prior disability after returning to work and after Equitable's policy became effective." 437 N.Y.S.2d 280, 418 N.E.2d 1299. Continental had a six-months recurrent disability provision identical to that of Protective herein. Although there are similarities, we do not believe the New York case is apposite. That case involved a disability which *occurred* during the first company's coverage and then *recurred* within six months during the second company's coverage. In the instant case the Chancellor made a finding, which we do not disturb, that there was but one disability, beginning in August 1975. Under these factual circumstances the issue of recurrent disability does not arise and the reasoning of the New York case is inapplicable.

■■■ Provident also alleges that the trial court was in error in failing to make findings and conclusions as requested pursuant to Rule 52, T.R.Civ.P. After a review of the record, we respectfully differ with this assertion. The Chancellor entered a detailed decree in which he set forth his findings and conclusions and we believe it adequately covered the areas raised by Provident. It is not necessary for the trial court to treat separately each fact or question at issue so long as his findings as a whole cover all relevant facts necessary to a determination of the case.

Finally, Hodge seeks relief from the ruling of the trial court which limited the recovery to the amounts accrued at the time of trial. The rule in this State was set forth in *Atkinson v. Railroad Employes' Mutual Relief Soc.,* 160 Tenn. 158, 22 S.W.2d 631, 634 (1929), wherein the Court stated:

So it is generally held that, in an action at law for breach of a contract of insurance, payable in weekly or periodic installments, only those installments in default at the time suit was brought may be recovered. [Citations omitted].

If the rule is otherwise when the suit is brought in a court of equity, it is because the more flexible rules of procedure in that court permit the filing of supplemental bills. [Citations omitted].

See also *Alsup v. Travelers Ins. Co.,* 196 Tenn. 346, 268 S.W.2d 90 (1954).

■■■ We are of the opinion that the Chancellor followed the applicable precedent in this State in making an award upon the complaint, as amended, only to the date of trial. This rule has been criticized as unfair, unrealistic, and unjust; however, we believe the application of the rule is tempered by the realization that the refusal of Provident to pay disability benefits from and after the time of trial, upon a proper

showing that Hodge remained disabled and that he was due such compensation, could constitute bad faith which would activate the statutory penalty. This safeguard in our law is designed to prevent a multiplicity of lawsuits and to assure good faith dealing between the parties.

The judgment of the Chancellor is modified to include prejudgment interest from the date the benefits became due.

The decree is affirmed as modified, and the cause is remanded to the trial court for enforcement of the decree and for such other proceedings as may be necessary. Costs of appeal are adjudged against Provident.

NEARN, P.J. (W.S.), and TOMLIN, J., concur.