# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
October 2, 2002 Session

## DONNA LYNN SEALS v. LARRY CLYDE SEALS

**Appeal from the Chancery Court for Hamilton County**
**No. 00-360      Howell N. Peoples, Chancellor**

**FILED NOVEMBER 26, 2002**

**No. E2002-00100-COA-R3-CV**

---

Donna Lynn Seals ("Wife") and Larry Clyde Seals ("Husband") were divorced in 2001, after seventeen years of marriage. The parties have one minor child ("Child"). Wife was primarily a stay-at-home mother during the marriage. Husband is employed as a general superintendent by Williams Union Boiler. The Trial Court found Husband's earnings for 2001 to be $117,000 in regular wages plus $16,380 in per diem. The Trial Court awarded Wife the parties' home in Hamilton County as alimony *in solido* and further ordered Husband to pay rehabilitative alimony in the amount of $1,365 per month for forty-two consecutive months. The Trial Court also ordered Husband to pay $2,063 per month in child support, which is an upward deviation due to Husband's absence of overnight parenting time since December 2000. Husband filed a post-trial Tenn. R. Civ. P. 52.01 motion for findings of fact. The Trial Court addressed this motion and entered its Final Decree of Divorce in November 2001. Husband appeals. We affirm.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which HOUSTON M. GODDARD, P. J., and HERSCHEL P. FRANKS, J., joined.

Selma Cash Paty, Chattanooga, Tennessee, for the Appellant, Larry Clyde Seals.

John R. Meldorf, III, Hixson, Tennessee, for the Appellee, Donna Lynn Seals.

# OPINION

## Background

After seventeen years of marriage, Donna Lynn Seals ("Wife") and Larry Clyde Seals ("Husband") were divorced in 2001. The parties have one minor child ("Child").

Wife, who has been primarily a stay-at-home mother, was working for the Tennessee Valley Authority ("TVA") when the parties married. She was working out a three-month lay off notice at the time she learned she was pregnant. Although Wife was offered another position at TVA, she declined this offer. Instead, Husband told Wife that no wife of his had to work, and suggested she quit work. Wife took this suggestion to heart. Since then, Wife's only employment outside the home involved work she did in connection with a small antique business the parties started in 1986.

At the time of trial, Husband was employed as a general superintendent by Williams Union Boiler, a division of Williams Union Power, and was working at the TVA plant in Paradise, Kentucky. In addition to his regular wages, which the Trial Court found to be $117,000 for 2001, Husband receives a per diem because his home is in Chattanooga, Tennessee and his duty station is in Kentucky. The Trial Court found Husband's per diem earnings for 2001 to be $16,380.

In 1986, the parties started a small antique business. They rented a booth in a mall, although neither party had to staff the booth. The price of each antique was affixed to the item and a cashier at the mall collected money from customers. Husband and Wife shared equally in traveling around to buy antiques for their booth. Wife kept the books.

Wife owned a vehicle prior to the marriage. At some point during the marriage, Wife borrowed approximately $6,000 against this vehicle and gave the money to Husband so he could pay a premarital income tax obligation. When Wife left her job at TVA, she chose to receive her retirement money rather than continue with her retirement plan. Wife also received a severance package. She used a portion of the severance package to pay off the loan against her vehicle.

In the Final Decree of Divorce filed November 19, 2001, the Trial Court found Wife was in need of both alimony *in solido* and rehabilitative alimony. The Trial Court awarded Wife the parties' home in Hamilton County as alimony *in solido* and further ordered Husband to pay rehabilitative alimony in the amount of $1,365 per month for forty-two consecutive months. The Trial Court also ordered Husband to pay $2,063 per month in child support, which included an upward deviation based upon Husband's absence of overnight parenting time since December of 2000.

Post-trial, Husband filed a Tenn. R. Civ. P. 52.01 motion requesting findings of fact regarding Husband's income and the amount of his per diem; Wife's income and/or earning capacity;

and the amount of child support that would have been ordered under the child support guidelines. The Trial Court's Order of November 27, 2001, as later amended, addressed Husband's Rule 52.01 Motion. The Trial Court denied the motion and specifically held that the findings contained in its Final Decree were sufficient to comply with the Tennessee Rules of Civil Procedure. In the Final Decree, the Trial Court specifically found Husband's earnings for 2001 were $117,000 in regular wages and $16,380 in per diem, and the child support obligation pursuant to the guidelines to be $1,611 per month. The Trial Court did not state specific figures for Wife's income and/or earning capacity in the final decree.

### Discussion

On appeal, Husband raises the following issues: (1) did the Trial Court err in setting the amount of child support by considering Husband's per diem as income to him and by making an upward deviation based upon Husband's failure to exercise visitation; (2) did the Trial Court err in failing to make a finding of fact as requested in Husband's Tenn. R. Civ. P. 52.01 motion; (3) did the Trial Court err in awarding Wife $31,859 from the Boilermaker-Blacksmith National Pension Trust; (4) did the Trial Court err in awarding Wife the marital home as alimony *in solido*, and; (5) did the Trial Court err in setting the amount of rehabilitative alimony. Wife raises the additional issue of whether this appeal is frivolous and, therefore, she should be awarded attorney's fees and costs for being required to defend.

Our review is *de novo* upon the record, accompanied by a presumption of correctness of the findings of fact of the trial court, unless the preponderance of the evidence is otherwise. Tenn. Rule App. P. 13(d); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). A trial court's conclusions of law are subject to a *de novo* review with no presumption of correctness. *S. Constructors, Inc. v. Loudon County Bd. of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001).

Before we consider the issues on appeal, we first address Husband's motion to consider post judgment facts. The motion requests this Court to consider that, by the Trial Court's August 12, 2002 Order, the primary residence of the Child now is with Husband, and, therefore, Husband no longer is obligated to pay child support to Wife. Wife admits these facts are true. In the exercise of our discretion, we grant the motion to consider post judgment facts. Husband's issue regarding whether the Trial Court erred in setting the amount of child support is moot post August 12, 2002 as Husband has no existing obligation to pay any future child support. Despite Husband's well-stated argument that we still should consider this issue as the minor child may yet primarily reside with Mother at some future time, such event may or may not happen. Therefore, we decline to address this issue.

We next address Husband's issue regarding whether the Trial Court erred in failing to make a finding of fact in response to Husband's Tenn. R. Civ. P. 52.01 motion. Tenn. R. Civ. P. 52.01 provides: "In all actions tried upon the facts without a jury, and upon request made by any party prior to the entry of judgment, the court shall find the facts specially and shall state separately its conclusions of law thereon and direct the entry of the appropriate judgment." Tenn. R. Civ. P.

52.01. "Findings of fact and conclusions of law rendered by the trial court 'promote[] a just and speedy determination of the issues,' and facilitate appellate review by the courts and appellate case preparation by the parties." *Bruce v. Bruce*, 801 S.W.2d 102, 104 (Tenn. Ct. App. 1990) (quoting *Murray Ohio Mfg. Co. v. Vines*, 498 S.W.2d 897, 902 (Tenn. 1973)).

"It is not necessary for the trial court to treat separately each fact or question at issue so long as his findings as a whole cover all relevant facts necessary to a determination of the case." *Hodge v. Provident Life & Accident Ins. Co.*, 664 S.W.2d 297, 300 (Tenn. Ct. App. 1983). The Middle section of this Court has held:

> [T]he failure of the trial court to render findings of fact and/or conclusions of law is not necessarily reversible error. As stated in *Hill*, "Rule 52.01, Rules of Civil Procedure, does provide for findings of fact, but there is no provision as to what facts must be found and what need not be found specially. Evidently, some discretion must reside in the trial judge in this regard."

*Bruce*, 801 S.W.2d at 104-05 (quoting *Metro. Dev. & Hous. Agency v. Hill*, 518 S.W.2d 754, 769 (Tenn. Ct. App. 1974)).

A review of the record discloses the Trial Court did make specific findings regarding Husband's income, the amount of his per diem, and the amount of child support that would have been ordered under the child support guidelines without any upward deviation. The only finding requested, and not specifically made, involved Wife's income and/or earning capacity. The Trial Court did, however, find Wife was in need of both rehabilitative spousal support and spousal support *in solido*. The evidence in the record does not preponderate against this finding. The Trial Court's findings, as a whole, covered all of the relevant facts necessary to a determination of the case. Therefore, we hold the Trial Court properly exercised its discretion in making its findings of fact. We affirm on this issue.

We next discuss the Trial Court's award to Wife of $31,859 from the Boilermaker-Blacksmith National Pension Trust. Tenn. Code Ann. § 36-4-121(c) sets out factors for a court to consider when making an equitable distribution of property. Tenn. Code Ann. § 36-4-121 (2002). These factors include such things as the duration of the marriage; the age, physical and mental health of the parties; and the employability, earning capacity, financial liabilities and needs of the parties. *Id.* This Court has stated:

> A trial court has wide discretion in dividing the interest of the parties in marital property. As noted by this Court in *King v. King*, 986 S.W.2d 216, 219 (Tenn. Ct. App. 1998), when dividing marital property: 'The trial court's goal in every divorce case is to divide the parties' marital estate in a just and equitable manner. The division of the estate is not rendered inequitable simply because it is not mathematically equal, or because each party did not receive a share of every item of

marital property....In the final analysis, the justness of a particular division of the marital property and allocation of marital debt depends on its final results.'

*Fritz v. Fritz*, No. E2001-00145-COA-R3-CV, 2002 Tenn. App. LEXIS 353, at *7 (Tenn. Ct. App. May 13, 2002), *no appl. perm. appeal filed,* (citations omitted).

Although Husband argues correctly on appeal that the court may not consider fault when dividing marital property, we find nothing in the record to suggest the Trial Court considered fault when making the division in this case. Rather, the evidence preponderates in favor of the Trial Court's division of property, including the award to Wife of $31,859 from the Boilermaker-Blacksmith National Pension Trust. We defer to the Trial Court's discretion on this issue and hold its division of marital property was not inconsistent with Tenn. Code Ann. § 36-4-121(c) and was an equitable distribution. We affirm on this issue.

As far as Husband's issues regarding whether the Trial Court erred in awarding Wife the marital home as alimony *in solido*, and in setting the amount of rehabilitative alimony, we note, "[t]here are no hard and fast rules for spousal support decisions." *Manis v. Manis*, 49 S.W.3d 295, 304 (Tenn. Ct. App. 2001). As this Court stated in *Manis*,

> Trial judges have broad discretion to determine whether spousal support is needed and, if so, its nature, amount and duration. Appellate courts are generally disinclined to second-guess a trial judge's spousal support decision unless it is not supported by the evidence or is contrary to the public policies reflected in the applicable statutes....Spousal support decisions hinge on the unique facts of the case and require a careful balancing of the factors in Tenn. Code Ann. § 36-5-101(d)(1). In virtually every case, the two most important factors are the demonstrated need of the disadvantaged spouse and the obligor's [sic] spouse's ability to pay.

*Manis*, 49 S.W.3d at 304 (citations omitted). Discussing the intent behind alimony, our Supreme Court has held: "the purpose of spousal support is to aid the disadvantaged spouse to become and remain self-sufficient and, when economic rehabilitation is not feasible, to mitigate the harsh economic realities of divorce." *Burlew v. Burlew*, 40 S.W.3d 465, 470-71 (Tenn. 2001) (quoting *Anderton v. Anderton*, 988 S.W.2d 675, 682 (Tenn. Ct. App. 1998)).

Tenn. Code Ann. § 36-5-101(d)(1) provides:

> In determining whether the granting of an order for payment of support and maintenance to a party is appropriate, and in determining the nature, amount, length of term, and manner of payment, the court shall consider all relevant factors, including:

(A) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;

(B) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earning capacity to a reasonable level;

(C) The duration of the marriage;

(D) The age and mental condition of each party;

(E) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;

(F) The extent to which it would be undesirable for a party to seek employment outside the home because such party will be custodian of a minor child of the marriage;

(G) The separate assets of each party, both real and personal, tangible and intangible;

(H) The provisions made with regard to the marital property as defined in § 36-4-121;

(I) The standard of living of the parties established during the marriage;

(J) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(K) The relative fault of the parties in cases where the court, in its discretion, deems it appropriate to do so; and

(L) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-5-101(d)(1) (2001).

In dealing with the issues regarding alimony, we first will discuss the Trial Court's award of the marital home as alimony *in solido*. "Alimony *in solido* is an award of a definite sum of alimony and 'may be paid in installments provided the payments are ordered over a definite period

of time and the sum of the alimony to be paid is ascertainable when awarded.'" *Burlew*, 40 S.W.3d at 471 (quoting *Waddey v. Waddey*, 6 S.W.3d 230, 232 (Tenn. 1999)). Typically, alimony *in solido* is awarded to adjust the distribution of the parties' marital property. *E.g., id.* An award of "alimony *in solido* is not inconsistent with a concurrent award of rehabilitative alimony." *Id.* at 472.

In *Burlew*, our Supreme Court held: "Provided that the trial court considers the purposes of alimony, ..., and the specific factors listed in the statute, Tenn. Code Ann. § 36-5-101(d), it has wide discretion in determining the appropriate award." *Id.* We find no evidence in the record to suggest the Trial Court did not consider the purposes of alimony, nor do we find evidence the Trial Court failed to consider the factors listed in Tenn. Code Ann. § 36-5-101(d). We hold the Trial Court's award of alimony *in solido* was not an abuse of discretion, and affirm on this issue.

Husband also argues on appeal the Trial Court erred in setting the amount of rehabilitative alimony. Husband does not, however, argue the Trial Court erred in awarding rehabilitative alimony as opposed to alimony *in futuro* or no spousal support.

As discussed above, trial courts have broad discretion in determining the amount and duration of alimony awards, and this Court will not second-guess a trial court's decision unless it is unsupported by the evidence or is contrary to the public policies embodied in the applicable statutes. It is the role of this Court to correct errors below, not to fine tune a trial court's decision.

In *Robertson v. Robertson*, our Supreme Court discussed the purpose of rehabilitative alimony as follows:

> [R]ehabilitative alimony may assist the disadvantaged spouse in obtaining further education or training. . . . ("Rehabilitative alimony serves to support an economically dependent spouse 'through a limited period of re-education or retraining following divorce, thereby creating incentive and opportunity for that spouse to become self-supporting.'"). It may also provide temporary income to support the disadvantaged spouse during the post-divorce economic adjustment.

*Robertson v. Robertson*, 76 S.W.3d 337, 340-41 (Tenn. 2002) (citations omitted).

The evidence indicates Wife was laid off from her job at TVA at about the time she learned she was pregnant. Although Wife was offered another position at TVA, she did not accept this job offer, but accepted Husband's suggestion to stay at home. Since then, Wife's only employment outside the home involved working with Husband in the small antique business the parties started in 1986. The evidence shows Wife could not return to work in her prior field without first begin re-trained and re-certified, as her certifications had lapsed. In 2000, Wife began a course of studies in computer science at Chattanooga State. She is unsure how long it will take her to complete these studies. In the Final Decree of Divorce filed November 19, 2001, the Trial Court found Husband's earnings for 2001 to be $117,000 in regular wages and $16,380 in per diem.

We hold that neither does the evidence in this case preponderate against the Trial Court's award, nor is the award contrary to public policy. The Trial Court's award of rehabilitative alimony in the amount of $1,365 per month for forty-two consecutive months was not an abuse of discretion. We affirm on this issue.

Finally, we address Wife's issue regarding whether this appeal is frivolous and she, therefore, should be awarded attorney's fees and costs for being required to defend. We decline to hold this appeal frivolous and further decline to award Wife attorney's fees and costs incurred as a result of this appeal.

### **Conclusion**

The judgment of the Trial Court is affirmed, and this cause is remanded to the Trial Court for such further proceedings as may be required, if any, consistent with this Opinion and for collection of the costs below. The costs on appeal are assessed against the Appellant, Larry Clyde Seals, and his surety.

_____
D. MICHAEL SWINEY, JUDGE